O'Meara v. The Mayor, &c. of New York.

---

PATRICK O'MEARA *v.* THE MAYOR, ALDERMEN, and COMMONALTY OF THE CITY OF NEW YORK.

The members of the Fire Department of the City of New York owe their allegiance to the City, not as members of a corporation, but as members of an organization identified with the administration of the City government, and forming a part of its protective police.

The powers exercised by the city corporation in reference to the Fire Department, are conferred and employed exclusively for the public benefit, and the corporation cannot be held liable as a master for the wrongful acts of firemen.

The plaintiff, while standing on the sidewalk, was knocked down and run over by a fire engine in the charge of firemen, and which was running upon the sidewalk in violation of a city ordinance —*Held*, that the city corporation could not be held liable for the injuries occasioned to the plaintiff by such negligent act. The mere fact that the firemen had at the time an engine in their possession by the authority of the Mayor and Common Council, did not create the relation of master and servant.

APPEAL by the defendants from a judgment entered on the verdict of a jury.

The action was brought to recover damages for a personal injury occasioned to the plaintiff by the carelessness and negligence of the defendants' servants.

O'Meara v. The Mayor, &c. of New York.

It appeared in evidence upon the trial, that the plaintiff, while standing on the sidewalk in Park Row, was knocked down and run over by Steam Fire Engine No. 42, which engine, it was admitted, belonged to the Fire Department of the City of New York.

The engine, at the time of the injury to the plaintiff, was in charge of the members of the company to which it belonged, and was running upon the sidewalk upon which the plaintiff was standing.

A motion to dismiss the complaint at the close of plaintiff's case having been denied, the defendants' counsel offered in evidence the ordinances of defendants, relative to the Fire Department, and read Section 53, of Art. 3, Chap. 10, of the Rev. Ord. of 1859, as follows:

" No fire-engine, nor hook and ladder, nor hose cart, shall, " in going to, or returning from, any fire, or at any other time, " be run, driven, wheeled, or placed upon any sidewalk, except " by the special order of one of the engineers, under the pen- " alty of twenty-five dollars for each offense, to be forfeited and " paid by every person aiding or assisting in, or consenting to " the violation of any one of the provisions of this section, to " be recovered by the Attorney of the Corporation, for the use " of the Corporation; and also under the further penalty of " the expulsion of the foreman, assistant-foreman, and all the " members of the Company."

The defendants then rested, and again moved for a dismissal on the evidence. The motion was denied.

The question whether the Corporation of the City was liable or not for the acts of the firemen, was a point retained by the Court for further consideration, and the question of damages was submitted to the jury.

The jury rendered a verdict for the plaintiff for $750, and from the judgment entered thereon the defendants appealed to the General Term.

*John E. Develin,* for appellants.

I. The only theory upon which the judgment in this action can be sustained, is that the firemen having the control and management of the engine, at the time of the injury to the plaintiff, were the agents or servants of the defendants, and

O'Meara v. The Mayor, &c. of New York.

were acting within the scope of their authority, or within the course of their employment. Now, the firemen of the City of New York are neither the agents or servants of the defendants, nor have the defendants any voice or agency in their appointment or removal (Laws 1855, ch. 112, p. 176; Laws 1861, ch. 33, p. 55).

II. The fact that the injury occurred while the firemen were engaged in the violating of a city ordinance, cannot render the defendants liable (*Boyland* v. *Mayor*, 1 Sandf., 27; *Levy* v. *Mayor*, Ib., 467; *Griffin* v. *Mayor*, 5 Seld., 456; *Howe* v. *City of New Orleans*, 12 La., 481).

*Capron & Lake*, for respondent.

I. The Fire Department was organized by the Montgomerie Charter. In 1789 it was incorporated for a benevolent purpose, "and for the purpose of extinguishing fires." This statute has been continued by various re-enactments, the last of which, passed in 1858, extends its provisions to the year 1880. It declares all firemen of the city to be members of the "*Fire Department of the City of New York* (see Davies' Laws relating to the City of New York, 392; Valentine's Laws relating to the City of New York, 748). In 1806, the Legislature subjected "all the firemen of the city" to the absolute control of the municipal authorities—no language could be more comprehensive for such a purpose than that which the Legislature employed (Davies' Laws, 427). That statute has never been repealed, nor has any statute containing provisions in conflict with that grant of power been enacted.

In 1813, power was vested in the municipality to appoint firemen. That statute prescribes their duties and liabilities, and subjects them to the control and direction of the city authorities as fully as language could declare that control and direction. In this latter particular it is merely cumulative in its effect (Davies' Laws, §§ 74, 76, 485). In 1817, a statute was enacted, which declared all persons who now are or hereafter may be appointed firemen to be members of the Fire Department of the City of New York.

In 1855, another statute was passed relating to the Fire Department of the city. That act in no respect affects the control of the municipality over that department or the firemen; It relates solely to the organization of fire companies, the

appointment of members, their discipline and government *as companies and members.* So long as companies exist and firemen continue to be members, both are subject to the control of the city corporation (Valentine's Laws, 758).

In 1861, the statute of 1855 was amended, but in no particulars affecting the question under consideration;—that amendment, however, affords internal evidence of the understanding of the Legislature, that the Fire Department is an integral part of the city government, and that the firemen are its servants or instruments in the discharge of its legitimate functions (Valentine's Laws, §§ 2, 8, 10, 761).

II. The public duty of the corporation to keep its streets in a safe condition for travel, embraces its sidewalks and renders its liability, in this case, unquestionable. The engine, in motion on the sidewalk, was an obstruction to its legitimate use by the citizens, and endangered public travel (*Storrs* v. *City of Utica*, 17 N. Y., 104; *Davenport* v. *Ruckman*, 16 Abbott's Pr., 341).

By the Court.—Brady, J.—The plaintiff, on the 21st of January, 1863, was injured while standing on the sidewalk in Park Row, by Engine No. 42, belonging to the Fire Department of the city of New York. The engine was drawn over his legs and shoulder, and he was wounded in various parts of his body in consequence. The jury awarded him seven hundred and fifty dollars, and the defendants appeal from the judgment entered thereon. The plaintiff claims to maintain the judgment upon the ground that the firemen in charge of the engine were the employees or servants of the defendants, and for whose negligence the latter are responsible.

The first act of the legislature in reference to the Fire Department was passed March 17, 1798, and by that act it was declared that all such persons as then were or thereafter should be engineers of the Fire Department, or firemen belonging to any fire engine of the city of New York, should be a body politic until the first Tuesday of April, 1818. The existence of the corporation has been continued by acts of the legislature until the 1st of May, 1880 (Acts of April 12, 1816; April 16, 1831; April 14, 1858).

The act of 1798 was passed upon the petition of the firemen,

praying to be incorporated; the more. effectually to provide adequate funds for the relief of disabled and indigent firemen, and for the purpose of extinguishing fires. By the act of the legislature, passed in 1813 (Davies' Laws, 485), the Mayor, Aldermen and Commonalty are required from time to time, and as often as it should be necessary, to appoint a sufficient number of strong, able, discreet, honest, and sober men willing to accept such appointment, being freeholders or freemen of the city, to have the care, management, working, and using of the fire engines, with power also to remove all firemen appointed or to be appointed, and declaring that the firemen were required to be ready at all times, to manage, work, and use the same. The legislature had previously, in 1806, conferred upon the Common Council the power to pass, and provide for the due execution of, such ordinances as they might deem proper, for the more effectual prevention and extinguishment of fires, and to compel the attendance of engineers and firemen to assist at the extinguishment (Davies' Law, 427, § 15).

The primary object of the incorporation of the Department was to provide for the relief of disabled and indigent firemen, in accordance with the prayer of the petition before referred to. It was entirely for their own benefit, and it had, so far as that object and design of its corporation was concerned, a separate and independent existence, being gifted with the general powers of a corporation, and authorized to hold and convey real and personal estate, not to exceed at any time twenty thousand dollars; a sum which was increased to fifty thousand dollars, by the act of the legislature, passed April 14th, 1831, and to one hundred thousand dollars by the act of 1851, passed April 21. But the duties of firemen remained unchanged, and their relation to the government of the city continued, and still continues. Its members owe their allegiance to the city, not as members of a corporation, but as members of an organization identified with the administration of the city government, and forming a part of its protective police, the object of which is to save the property of the citizen from destruction by fire, and the services of which, in that respect, are, as we have seen, under the control of the Common Council. As a body politic, it is neither required by the act of its incorporation, nor was it contemplated by the incorporators, that it should furnish the means by which fires were to be extinguished.

On the contrary, the defendants were to supply the necessary apparatus to accomplish that result. Its existence, whether incorporated or not, was, and is, essential to the public welfare,—to the protection of life and property,—and the defendants, as an act of sovereignty, furnish it with such apparatus, and grant it such facilities as are most conducive to the effectual performance of the duties of its members, which, as we have seen, are established by law. The defendants are required, also, to appoint the members or firemen, and thus, both in reference to filling its ranks, and endowing it with means to be of use, they act in their legislative capacity. Aside from that, the duties to be performed by the firemen are not for the benefit of the defendants particularly. They are for the pecuniary benefit of the inhabitants of the city, as well as for their personal safety. They result in no benefit or advantage to the defendants, other than to individuals, and then, only, when a loss or disaster is averted by their efforts. The powers exercised, therefore, by the defendants, in reference to the Fire Department, are conferred and employed exclusively for the public benefit, not for purposes of private advantage or emolument, and this is an answer to the plaintiffs' claim (*The Mayor &c.* v. *Bailey*, 2 Denio, 433; *Lloyd* v. *The Mayor, &c.*, 5 N. Y., 369; *Griffin* v. *The Mayor, &c.*, 9 N. Y., 456).

The defendants have not only legislated in regard to the firemen and their apparatus, but they have also, by ordinances passed at various periods, extending over a series of years, prohibited the running of a fire engine or a hose cart on any sidewalk except by special order of the engineers, under penalty of twenty-five dollars for each offence, and the expulsion of the foreman, assistant foreman, and all the members of the company (See Laws Relative to the Fire Department, compiled pursuant to a resolution of the Common Council, 151, 155, 171, 295).

The mere fact that the firemen had an engine in their possession by authority of the defendants, did not create the relation of master and servant under the circumstances surrounding the fact, and to which allusion has been made, any more than granting a license to a hackman, and thus authorizing him to drive his carriage over the streets of New York, would make him the defendants' servant, and them liable for his negligent exercise of the privilege conferred. "It is the duty of the govern-

ment," said SANDFORD, J., "to protect and preserve the rights of the citizens of the State, both in person and in property, and it should provide and enforce wholesome laws for that object. But injuries to both person and property will occur, which no legislation can prevent, and which no system of laws can adequately redress. The government does not guaranty its citizens against all the casualties incident to humanity or civil society (*Levy* v. *City of New York*, 1 Sandf., 467; approved in *Griffin* v. *The Mayor*, &c., *supra*).

The relation existing between the defendants and the firemen being of a legislative character, the one imposing by authority, and the other assuming, certain duties, the defendants have not incurred liability to the plaintiff. The casualty which made him a sufferer was one incident to his status as a member of the community, for which his redress is not against the defendants, but against the firemen, who, at the time he was injured, were engaged in violating the law which the defendants declared they should obey. It has not been deemed necessary, for the purposes of this appeal, to review the origin of the Fire Department, or the various statutes which have been adopted relating to them. Sufficient reference has been made to show that the relation sought to be established between the firemen and the defendants, does not exist, and that the judgment, therefore, must be reversed.

Judgment reversed.