The Verona Central Cheese Factory *v.* Murtaugh.

---

THE VERONA CENTRAL CHEESE FACTORY *v.* JOSEPH P. MURTAUGH.

(GENERAL TERM, FOURTH DEPARTMENT, FEBRUARY, 1871.)

In an action to recover penalties imposed by statute (Laws, 1865, chap. 361) upon "whoever shall knowingly" do certain specified acts, — *Held*, that the plaintiff must show that the defendant violated the statute with personal knowledge of the facts constituting the offence; and that such knowledge could not be imputed to him from the acts of others, and their agency for, or relation to, the defendant.

This was a motion by the plaintiff for a new trial, upon a case and exceptions, heard at General Term in the first instance.

The action was brought by the plaintiff, as an incorporated cheese manufactory, and also as assignee of the patrons of such company, to recover penalties given by the act of 1865, chapter 361, which enacts, that, "Whoever shall knowingly sell, supply, or bring to be manufactured, to any cheese manufactory in this State, any milk diluted with water, or in any way adulterated, or milk from which any cream has been taken, or milk commonly known as skimmed milk, or who-

ever shall keep back any part of the milk known as strippings, * * * shall, for each and every offence, forfeit and pay a sum not less than twenty-five nor more than one hundred dollars, with costs of suit," &c.

The complaint averred the plaintiff's incorporation, &c., and also that, at divers specified times, the defendant had knowingly brought and supplied to the plaintiff, to be manufactured into cheese, large quantities of milk diluted and mixed with water, and at divers other times had knowingly brought and supplied to the plaintiff, to be manufactured into cheese, large quantities of milk from which the cream, or a portion thereof, had been taken, and also large quantities of milk known as skimmed milk; and at divers other times that the defendant knowingly kept back a part of the milk known as "strippings;" in violation of the statute, &c.

The answer denied several of the allegations of the complaint in detail, and also specifically denied that, at the times and places mentioned in the complaint, or at any other times or places, the defendant did knowingly bring or supply to the plaintiff, to be manufactured into cheese, large quantities or any quantity of milk diluted or mixed with water, or milk from which the cream, or any portion thereof, had been taken, or milk known as skimmed milk, or knowingly kept back, or caused to be kept back, a part of the milk known as strippings, in violation of statute, as alleged; and, upon the issue formed by this denial, the questions upon the motion arose.

It was proved that the defendant had sent milk to the plaintiff's manufactory at the times alleged in the complaint, which, upon trial, was found to be poor, the cream lighter than it should have been, and the milk itself bluish in color and thinner, and that, upon the use of tests at different times, it was found that the milk so furnished by the defendant had been diluted with water, in the proportion of from one-tenth to one-sixth of its quantity. It was also proven that the defendant's wife had been seen to dilute the milk, so furnished to the factory by the defendant, with water, and to keep back strippings from the milk so furnished, and also to skim off

The Verona Central Cheese Factory v. Murtaugh.

the cream from milk' standing over night in the defendant's barn, and which was sent to the plaintiff's manufactory with the rest by the defendant; that the milk so diluted, &c., was taken from the defendant's cows in his barn by the defendant's wife and son and daughters. It was further shown that, upon the use of a lactometer, milk taken from cans used for carrying it to the plaintiff's factory was found to contain one-fourth water.

There was evidence to show that the defendant had, on one or more occasions, pumped water at a pump near by the milking barn, and taken it into the barn about milking time.

The defendant's counsel moved for a nonsuit, on the ground that there was no evidence that the defendant knew or had any notice that his milk was watered or skimmed, or that any part of the strippings thereof was kept back from the factory.

It was insisted by the counsel for the plaintiff, that the evidence that the wife or children of the defendant watered and skimmed the milk and kept back the "strippings" raised the presumption that it was done with the knowledge or assent of the defendant, or that, at least, it cast the burden upon the defendant of showing that it was done without his knowledge or assent, and that, in the absence of such proof, the jury would be warranted in finding that it was done with his knowledge or assent, and in giving a verdict against him and in favor of the plaintiff.

The court granted the motion for nonsuit, holding and ruling that the evidence was not sufficient to be submitted to the jury, or to warrant a verdict for the plaintiff. The counsel for the plaintiff duly excepted, and the court ordered that the case and exceptions made should be heard in the first instance at General Term.

*Jno. D. Kernan*, for the appellant, insisted that the defendant's wife was his servant or agent to prepare the milk for delivery to the factory, and watered and skimmed, &c., in the course of her employment as such, or, at least, if these facts were disputed, the question should have been left to the

.jury. (*Commonwealth* v. *Nichols*, 10 Metc., 262, and cases cited); and, if the facts were so, the defendant was, at least *prima facie*, liable, and was bound to prove the acts in question to have been done without his knowledge. (*Davis et al.* v. *Bemis*, 40 N. Y., 453, note; *Lock* v. *Stearns*, 1 Metc., 562, 563; *Commonwealth* v. *Nichols*, 1 Salk., 289; *Attorney-Gen'l* v. *Siddon*, 1 Cromp. & Jer., 219; Story on Agency, §452, pp. 560, 561, §456; *Lee* v. *Village of Sandy Hill*, 40 N. Y., 442, 448, 449.) The word "knowingly" justly protects him who, without knowledge, furnishes to a factory watered or skimmed milk. It does not, and was not designed to, affect the rule of law that knowledge in the servant or agent, in the course of his employment or agency, is, *prima facie*, at least, to be imputed to the principal, or that, where the employer affords the means of committing the injury, and it is "knowingly" committed, the principal is to suffer, rather than an innocent third person. (1 Wait, 245, 246, and cases cited; Dunlop's Paley on Agency, 306.)

*I. N. Messinger*, for the respondent, cited Hawkins' P. C., Am. ed., 188, §16; 1 Bish. Crim. Law, §250, and notes; 2 East P. C., 641; 10 Serg. & R., 393; 3 Cush., 558. He contended that the word "knowingly" could not be struck from the plaintiff's complaint as surplusage, but that it was essential to the cause of action, and should be proved, according to the language of the statute. He also cited *Williams* v. *The East India Co.* (3 East, 192); 22 Barb., 662; 21 id., 212; 2 Caines, 97. To the point that knowledge could not be presumed in the defendant from the acts of his servants or agents, he cited *Clark* v. *Met. Bank* (3 Duer, 241–249); 1 Bish. Cr. Law, §§ 392, 393.

Present — JOHNSON and TALCOTT, JJ.

By the Court — JOHNSON, J. The question before us is, whether the case ought to have been submitted to the jury. The judge at the circuit refused to submit the case to the jury,

on the ground that the evidence was insufficient to warrant a verdict against the defendant.

The defendant was one of the plaintiff's patrons, and furnished milk to the factory, with several other patrons. The action was brought to recover several penalties given by the act of 1865. (Sess. Laws of 1865, chap. 361.) The complaint in several counts charged that the defendant, on several occasions, in several months specified, in the year 1867, knowingly brought and supplied to said cheese factory milk mixed with water, milk from which the cream had been skimmed, and milk from which the strippings had been kept back and retained by defendant.

The testimony is clear and uncontradicted that the defendant's wife, son and daughters, who had charge of the milking of defendant's cows, and preparing the milk for the factory and sending the same there, were guilty, knowingly, of the several acts charged in the complaint; but there was no evidence to show that the defendant had any personal knowledge of the wrongful acts of the wife and children. The statute provides that, " whoever shall knowingly sell, supply, or bring to be manufactured, to any cheese manufactory in this State, any milk diluted with water, or in any way adulterated, or milk from which any cream has been taken, or milk commonly known as skimmed milk, or whoever shall keep back any part of the milk known as strippings," &c., " shall, for each and every offence, forfeit and pay a sum not less than twenty-five dollars, nor more than one hundred dollars, with costs of suit," &c. It is argued on behalf of the plaintiff that the jury would have been justified in finding, from the relation of the persons who did the wrongful acts complained of to the defendant, and the manner in which the business of furnishing milk was carried on by him, through these persons, that he had knowledge of what they were doing. It is also claimed that the knowledge of the servants by whom the wrongful acts were done was, *prima facie*, evidence of knowledge on the part of the defendant, and that the law will impute such knowledge to him, unless he proves the contrary; that the

The Verona Central Cheese Factory *v.* Murtaugh.

burden is cast upon him of disproving knowledge where his servants, in the course of their employment, have habitually practiced the wrongful acts charged.

The statute imposes the penalty upon the person who shall "*knowingly* sell, supply, or bring to be manufactured," milk in the improper condition specified. The action, being for the penalty inflicted for the forbidden act, is to be construed strictly, and not liberally or equitably. The term "knowingly," in an action like this, must undoubtedly be held to mean actual personal knowledge.

The statute imposes the penalty, not against the owner of the milk, as such, but against every person, and all persons, who shall knowingly either sell, or supply, or bring to be manufactured, milk in that condition. The term "knowingly" was used to designate the persons upon whom the penalty should be imposed; and it is not to be enlarged or extended so as to meet any supposed mischief which the statute was intended to guard against and prevent.

There is a class of cases where the law imputes knowledge to the principal, of the fraudulent acts and conduct of his servants, because he is benefited thereby, and takes the fruits of the fraud or other wrong-doing. The law compels him, in such cases, to adopt the instrumentalities, for the purpose of charging him with the injury by which he has been benefited. But this rule does not apply in penal actions. In such cases we are to see what the statute is, and are not at liberty to go beyond it, or to extend it by construction. When the statute says, *knowingly*, we cannot impute knowledge, or allow it to be inferred, because others knew, who were in the service of the party charged. The plain intention of the statute is to mulct the party doing the wrongful act with guilty knowledge, and no one else. Perhaps the best and most lucid exposition of the rule in actions for penalties to be found in the books is that laid down by Chief Justice MARSHALL in *United States* v. *Wiltberger* (5 Wheat., 76). The rule, he says, that penal laws are to be construed strictly is founded on the tenderness of the law for the rights of individuals, and on the plain in-

ciple that the power of punishment is vested in the legislature, and not in the judicial department. It is the legislature, and not the court, which is to define a crime and ordain its punishment. He admits that the intention of the law is to govern in penal as well as in other statutes, and that they are not to be so strictly construed as to defeat the obvious intention of the legislature. "The maxim," he says, "is not to be so applied as to narrow the words of the statute to the exclusion of cases which the words, in their ordinary acceptation, or in that sense in which the legislature has obviously used them, would comprehend. The intention of the legislature is to be collected from the words they employ. Where there is no ambiguity in the words, there is no room for construction." This rule is illustrated in the case of *Strong* v. *Stebbins* (5 Cow., 210), which was an action brought to recover a penalty given by statute "for willfully and knowingly aiding or assisting the tenant in the fraudulent conveying and carrying away goods and chattels from demised premises." · The court held, that aiding the tenant by advice and counsel was not enough, and that it was necessary to prove *physical aid or assistance* to bring the case within the statute. So in the actions for penalties in "forcibly or fraudulently" passing any toll-gate without paying toll. (*Monterey, &c., Plankroad Co.* v. *Faulkner*, 21 Barb., 212, and *Bridgewater and Utica Plankroad Co.* v. *Robbins*, 22 id., 662), it was held, that there must be actual force or actual fraud, or the action would not lie; that constructive fraud was not enough. So here, I think the statute must be construed to mean actual, guilty knowledge, which must be proved, and which cannot be presumed or inferred merely from the acts of others, and their relation to the defendant. The plaintiff's counsel cites the decision of the Court of Appeals in the case of *Davis* v. *Bemis* (40 N. Y., 453, note), which was an action to recover treble tolls for signing and delivering to the collector of tolls a false bill of lading. There the false bill was signed and delivered by the agents of the defendant, who had charge of that branch of his business. But the case was decided upon the principle of the

maxim, *qui facit per alium facit per se*, which certainly cannot be applied to this case.

We are also referred to cases where, in actions to recover penalties for selling spirituous liquors without a license, it has been held that the principal was liable when the liquor was sold by his servant or agent, without proving the knowledge of the principal. But the language of the statute in those cases is different from the language here. It does not make actual personal knowledge the express ground of liability, as in this statute. As there was no proof here of actual personal knowledge on the part of the defendant, and no evidence tending to prove it, the plaintiff was properly nonsuited. A new trial must, therefore, be denied.