RICHARD SMITH, PLAINTIFF, *v.* THE CITY OF ROCH-
ESTER, DEFENDANT.

*Common council of Rochester — power of, over fire department — liability of city for*
*negligence of a member of the fire department.*

A committee of the common council of the city of Rochester directed the fire
department of the city to assemble in front of the city hall, at midnight, on
the 31st of December, 1875, to celebrate the incoming of the centennial year.
This action was brought to recover damages for injuries sustained by plain-
tiff who was struck by one of the hose carts through the negligence of the
driver.

*Held,* that the common council had no authority to direct the fire department to
so assemble, and the city was not responsible for injuries occasioned thereby.

That even if the common council had authority to so direct, yet the city
would not be liable for the negligence of a member of the fire department
while engaged in the performance of his legitimate duty as such, whether in
exercising, as directed by the common council, or in endeavoring to prevent
or extinguish a fire.

MOTION by the plaintiff for a new trial, on exceptions taken at
the Monroe Circuit, before Mr. Justice DWIGHT, and ordered to be
heard at the General Term in the first instance.

This action was brought to recover for injuries caused by the
negligence of the driver of a hose cart, who is alleged to have been
acting at the time in the employment and under the direction of
the defendant. The hose cart was driven along a public street of
the city of Rochester; in the night time, in obedience to an order
of a committee of the common council, directing the fire department
of the city to assemble in front of the city hall, at midnight, on the
31st December, 1875, to celebrate the incoming of what is known
as the "centennial year." It was alleged that, by the carelessness
of the driver, the horses and hose cart were driven against the plain-
tiff, the night being very dark, and he was knocked down and injured.
The plaintiff was nonsuited on the opening of his counsel.

*J. H. Martindale,* for the plaintiff. When the corporation directs
the use of the property of the fire department in any service,
not of a public nature enjoined by law, but for private emolument,
caprice, display or pleasure, it is just as much responsible for dam-

ages arising from negligent misconduct as any other person, or as for any other malfeasance. In this case the corporation was celebrating a great event, by fireworks and sports, and using the horses and cart for that purpose, and not in public service, when the injury complained of was inflicted on the plaintiff. (*Oliver* v. *City of Worcester*, 102 Mass., 499–500, and cases there cited; *Thayer* v. *City of Boston*, 19 Pick., 511; Dillon on Munic. Corp., §§ 778, 779, 780, 790 [2d ed.], and notes; Brice's Ultra Vires [Green's ed.], 265 and 269; 22 N. Y., 305, 306; 58 id., 639; 2 Den., 433; 62 N. Y., 170; *Neuert* v. *City of Boston*, 120 Mass., 338.) The corporation had the right and power to require the appearance of the horses, cart and driver at the time and place designated, and, in execution of such power, to vest a committee with power to employ such horses and cart, and direct them to be present at the place appointed. The corporation is liable for the trespasses of its officers, acting pursuant to its orders, where the subject matter of the order is not *ultra vires.* (Dillon on Corp., §§ 769, 770, 780; *Lee* v. *Village of Sandy Hill*, 40 N. Y., 442; Brice's Ultra Vires [Green's ed.], 265, 269; Angell & Ames on Corp. [10th ed.], 326; 15 N. Y., 512, 519; 21 How. [U. S.], 209–210; 19 Pick., 511; 3 Lans., 44; 2 Hilt., 358; 5 Bosw., 414, 419, 420; *Bastable* v. *City of Syracuse*, 3 N. Y. Weekly Dig., 467, Gen. T., 4th Dept.; S. C., 8 Hun, 592, fully reported; 1 T. & C., 537; 1 Hun, 343; S. C., 3 T. & C., 504.)

*J. B. Perkins*, for the defendant. For the negligence of any person employed by the city, as a member of the fire department, the defendant is not liable. A person employed in this capacity is not deemed a servant of the corporation, for whose negligence it is liable. (*Jewett* v. *New Haven*, 38 Conn., 368; *O'Meara* v. *Mayor*, 1 Daly, 425; *Wheeler* v. *Cincinnati*, 19 Ohio, 19; *Hafford* v. *New Bedford*, 16 Gray, 297; *Fisher* v. *Boston*, 104 Mass., 87; *Maximilian* v. *Mayor*, 62 N. Y., 160.) If it was a legitimate use of the fire department, the city is not liable under the cases cited under the first head. If it was an illegitimate use, then the whole thing was *ultra vires*, and there is no liability. (*Mayor* v. *Cunliff*, 2 Comst., 165; *Brown* v. *Utica*, 2 Barb., 104; *Anthony* v. *Inhabitants of Adams*, 1 Metc., 284; *Morrison* v. *Lawrence*, 98 Mass., 219; Dillon on Munic. Cor., §§ 767, 768, and cases cited.)

SMITH, J.:

The plaintiff seeks to hold the defendant liable in this action, on the principle that the employe is responsible for the negligence of his servant. The defendant is a municipal corporation. Its powers are largely vested in a body of public officers, known as the common council, under whose direction the person was acting, whose negligence (as is now to be assumed) caused the inquiry of which the plaintiff complains.

The rule which makes natural persons liable for the wrongful or negligent acts of their servants and agents, done in the course and within the scope of their employment, applies to corporations as well, whether municipal or created for purposes of pecuniary gain. (*Lee* v. *The Village of Sandy Hill*, 40 N. Y., 442, and cases there cited by MASON, J., p. 447.)

In this case, the driver of the hose cart was undoubtedly acting within the scope of his employment, provided the common council had authority to order the fire department to turn out on the occasion, and for the purpose above stated. To justify the conclusion that the common council had authority to make the order in question, it must appear that they were authorized by the charter of the city to do the act, or that they did it *bona fide*, in pursuance of a general authority to act for the city on the subject to which it relates. This is, in substance, the rule that was followed by the Supreme Court of Massachusetts, in the case of *Thayer* v. *The City of Boston* (19 Pick. R., 516), and by the Court of Appeals in this State, in *Lee* v. *The Village of Sandy Hill* (*supra*), and in view of what was said by the judges in those cases, the rule must be regarded by us as defining the extent to which the principle, which holds the principal liable for the act of his agent, is to be applied against a municipal corporation. As such a corporation is created for governmental purposes only, it possesses merely such powers as are expressly granted by law, or such as are necessary to carry into effect the powers expressly conferred. No act of its officers, *ultra vires*, will make the corporation, or the inhabitants of the municipality composing it, liable upon contract or in tort. The cases cited by the appellant's counsel, in which municipal corporations have been held liable for the acts of their agents, were within the rule laid down in *Thayer* v. *The City of*

*Boston (supra).* They are *The Mayor* v. *Bailey* (2 Den., 433), *Turnpike Company* v. *City of Buffalo* (58 N.Y., 639), *Maximilian* v. *The Mayor* (62 id., 170), *Oliver* v. *City of Worcester* (102 Mass., 499 and cases there cited), *Neuert* v. *City of Boston* (120 id., 338). A different rule is applicable to corporations created to carry on business for pecuniary profits. (See *Bissell* v. *Mich. S. and Northern Ind. R. R. Co.,* 22 N. Y., 258, *per* SELDEN, J., p. 305, *et seq.*)

The question of the authority of the common council to order out the fire department of the city, at the time and place, and for the purpose specified, involves, then, two inquiries, the first of which is whether they were authorized by the charter to make the order. The provisions of the charter (Laws of 1861, ch. 143), in which the appellant's counsel suggests the authority is to be found, will be briefly referred to. Section 222 provides that the common council may organize and maintain a fire department for said city, to consist of one chief engineer, four assistants, and so many fire wardens and firemen as may be appointed by the common council. And by section 223, it is enacted that the common council may make rules and regulations for the government of said engineers, wardens and firemen; may prescribe their respective duties in case of fire or alarms of fire; and may prescribe and regulate the time and manner of their exercise, and may impose reasonable fines for the breach of any such regulations. Those provisions are contained in title 8, headed: "Prevention and extinguishment of fires." Section 40, vests in the common council the management and control of the prudential affairs of the city, and of its property, and the power to make such orders and by-laws relating to the same as it shall deem proper and necessary. These provisions are far short of giving authority to make the order in question. Their sole object, in vesting the common council with power over the fire department, is to prevent and extinguish fires. But the order directing the fire department to turn out, at midnight, to attend the "centennial" celebration, had no connection with that object. However laudable the impulse by which the order was prompted, it was an excess of authority; like the action of the common council of Buffalo, in Hodge's case (*supra*), in furnishing an entertainment for the citizens and guests of the city, on the fourth of July, at the public expense.

The order in question can not be regarded as a use of the power

of the common council to regulate the exercise of the fire depart-
ment.   But if the order could be so regarded, it is enough to say
that for the negligence of a member of the fire department while
engaged in the performance of his legitimate duty as such, whether
in exercising as directed by the common council, or in endeavoring
to prevent or extinguish a fire, the city would not be liable.

The charter, in providing for the preservation of the city from
damage and exposure to danger from fire, must be regarded as
imposing a public duty for the public welfare, and the fire depart-
ment when engaged in extinguishing fires, or in exercising pursuant
to the orders of the city authorities, were performing a public,
governmental act, for the general good, and an action will not lie
against the city for their negligence while acting in the discharge
of their official duty.   (*Jewett* v. *New Haven*, 38 Conn., 368;
*O'Meara* v. *Mayor*, 1 Daly, 425; *Wheeler* v. *Cincinnati*, 19 Ohio,
19; *Hafford* v. *New Bedford*, 16 Gray, 297; *Fisher* v. *Boston*,
104 Mass., 87.)

The appellant's counsel also suggests that the power in question
is included in the authority to regulate "sports" (§ 40, sub. 4), and
the exhibition of fireworks (sub. 6).   The authority given for that
purpose is one of police, by which showmen and exhibitors may be
regulated and controlled, in the interests of the city.   It was not
intended that the common council should have authority to embark
the city in enterprises of that character.

The second inquiry is whether the common council made the
order *bona fide*, in pursuance of a general authority to act for the
city on the subject to which the order relates.   The principle involved
in this inquiry applies only to those cases in which the rights
of both the public and of individuals are involved, in which it can
not be known at the time the act is done whether it is lawful or
not.   In *Thayer* v. *City of Boston*, the officers of the city, having
authority over streets and public lands, took possession of land
which the plaintiff claimed was a public highway.   The Court held
that the city was liable, as its officers, although they in fact exceeded
their authority, yet acted in good faith, in pursuance of their general
authority over the subject matter, and for the benefit of the city.
The case of *Lee* v. *The Village of Sandy Hill* (*supra*) was of a
similar character.   But those cases have no analogy to this.   In each

of them, the authority of the agents of the corporation to do the particular act depends upon certain apparent facts, which were ultimately adjudged not to exist. Here there was no doubtful question of fact, but the act of the common council was *ultra vires*, as matter of law, upon the facts as they were known to be at the time. It follows that the city is not liable, and that the plaintiff was properly nonsuited.

The motion for a new trial should be denied, and judgment ordered for the defendant on the merits.

MULLIN, P. J., and TALCOTT, J., concurred.

Ordered accordingly.