Stewart agt. Strasburger.

# SUPREME COURT.

ALEXANDER T. STEWART *et al.*, appellants, agt. MOSES STRAS-
BURGER, respondent.

*Order of arrest for fraud in purchasing goods.*

Proof of fraud, which always endeavors to guard itself against discovery
by concealment, is peculiarly dependent upon the force of circum-
stances for its support.

When these are so decided as satisfactorily to. justify the conclusion
that an intent to defraud existed, it is not to be rejected because of the
positive denial of it by the parties concerned in the commission of the
wrong.

Where the wife of the defendant made the purchases of the goods in ques-
tion of the plaintiffs, which were for family use, and were delivered at
defendant's residence, she acted as the agent of the defendant, and, from
the circumstances disclosed, she must have been aware—if not of his
insolvency, as she swore she was not—that his pecuniary condition
had become extremely critical, and that it was necessary to purchase
such a large quantity of goods before the facts should be known, which
would at once discredit him.

The probability, therefore, was very decided that the goods were pur-
chased by her with the expectation and design that they would not be
paid for.

*First Department, General Term, May,* 1876.

APPEAL from order vacating order of arrest.

*Henry H. Rice,* for appellants.

Between the 8th day of November and the 3d day of
December, 1875, the defendant purchased from the plaintiffs
goods and merchandise of the value of $2,304.23, the goods
being delivered at the defendant's residence, and the bill sent
to him at his place of business for payment, but was not paid.

Stewart agt. Strasburger.

A short time previous to these purchases the defendant placed upon record second mortgages on all of his real estate in the city of New York, and removed the proceeds thereof to St. Louis, Missouri; and in the month of October, 1875, he allowed several promissory notes made by him to go to protest, all of which the defendant concealed from the plaintiffs, and of which they had no knowledge when selling him the goods in question. For several years preceding the defendant had dealt with the plaintiffs, and always paid his bills.

On the 13th day of December, 1875, the defendant made a general assignment for the pretended benefit of his creditors, which assignment was filed on the fourteenth of that month, and his place of business closed. On the 31st day of December, 1875, the defendant was arrested by the sheriff of the city of New York, under an order of arrest granted herein, on the ground that he was guilty of fraud in contracting the debt for which this action is brought, which order of arrest was vacated by Mr. justice LAWRENCE, on the 22d day of March, 1876. A short time previous to the purchase of the goods in question the defendant made large purchases of other merchants in New York, for which he was afterward arrested, and indicted by the grand jury for obtaining said goods under false pretenses.

I. The defendant was insolvent at the time of the purchase of the goods in question, and he was guilty of fraud in concealing the fact of his insolvency from the plaintiffs.

It was held, in *Hennequin* agt. *Taylor* (24 *N. Y.*, 129), that two facts existing, viz., purchase by a person insolvent, without disclosing that fact, and an intent not to pay, constituted fraud, and vitiated the sale. Fraud upon the part of a vendee in obtaining credit upon a purchase may be based as well upon a suppression of the truth as the proofs of assertion of a falsehood (*Devoe* agt. *Brandt*, 53 *N. Y.*, 462).

In *Johnson* agt. *Monell* (2 *Abb. Ct. of Appeals Dec.*, 866, MORGAN, *J.*), it was held: The mere omission of one pur-

Stewart agt. Strasburger.

chasing goods on credit to disclose the fact that he is insolvent and unable to pay, is sufficient, without any affirmative representation, to render the purchase fraudulent and the sale void (*Opinions by* MORGAN *and* PECKHAM, *JJ., Sept.,* 1866).

Authorities are not wanting which hold that, if the purchaser in such case conceals the fact of his insolvency from the vendor, it is a fraud, and the property is not changed in the hands of the vendee (*Durell* agt. *Haley*, 1 *Paige*, 492).

If a buyer who is insolvent conceals that fact from the seller, and thus obtains goods without intending to pay for them, the property is not changed while the goods are in the hands of such buyer, and a levy thereon of an execution against him is inoperative as against the vendor (*Id.*).

II. The purchase of the goods in question was made with the intention of not paying for them.

The question is, whether the purchaser made the purchase with the preconceived intention not to pay for the goods. Although a purchase of goods on credit by one who knows himself to be insolvent is not necessarily fraudulent, yet, when it is made with the preconceived design not to pay, it is fraudulent, and this design may be inferred from circumstances, such as soon afterward failing without any intermediate cause, and making an assignment (*Court of Appeals*, 1866, *Byrd* agt. *Hall*, 1 *Abb. Ct. of Appeals*, 285).

A purchase with intent not to pay for the goods is fraudulent, so as to avoid the sale (*Supreme Court*, 1841, *Ash* agt. *Putnam*, 1 *Hill*, 302; *S. T.*, 1840, *Acker* agt. *Campbell*, 23 *Wend.*, 372).

III. The defendant knew that he was insolvent at the time of making the purchases of the goods in question, and had no reasonable expectation of paying for them.

If the purchaser knows himself to be insolvent, and has no reasonable expectation of paying for the goods, it is sufficient evidence of fraud to avoid the sale (*Powell* agt. *Bradley*, 9 *Gill & Johns.*, 220; *Pars. on Con.*, 270, *note id.*).

Assuming that Strasburger was insolvent, or in contem-

plation, &c., when the goods were bought, it was a fraud on his part, even without any affirmative representations of solvency by him. He must, from the circumstances, be deemed to have purchased with intent not to pay.

Where the buyer, at the time of making a new purchase, is not only insolvent, but has performed an open and notorious act of insolvency, by breaking up his business and assigning his property for the benefit of his creditors, it is his duty, arising out of his previous dealing with the sellers, to communicate that fact to them before the sale, and the violation of that duty amounts to a fraud. The act of insolvency is a well defined limit for the commencement of the legal obligation to disclose his inability to pay (*Supreme Ct.*, 1852, *Mitchell* agt. *Worden*, 20 *Barb.*, 253).

Where the buyer's omission to disclose the fact of his insolvency or great pecuniary embarrassment — on applying to purchase from one supposing, and believed to suppose, the applicant solvent — is the result of a fraudulent purpose to get possession of goods with intent not to pay for them, the purchase is fraudulent; but where the omission is in consequence of an honest belief that the buyer can improve his condition, and will be able to pay for the goods, the purchase is not fraudulent (*N. Y. Superior Ct.*, 1861, *King* agt. *Phillips*, 8 *Bosw.*, 603).

The mere omission of one purchasing goods on credit to disclose the fact that he is insolvent and unable to pay, is sufficient, without an affirmative representation, to render the purchase fraudulent and the sale void (*Ct. of App.*, 1866, *Johnson* agt. *Monell*, 2 *Abb. Ct. App. Dec.*, 470; *to the contrary were Mitchell* agt. *Worden*, 20 *Barb.*, 253; *Hall* agt. *Naylor*, 6 *Duer*, 71).

As between buyer and seller, fraud may be perpetrated either by a false and fraudulent representation of a material fact, or by a fraudulent concealment of such a fact (*Sup. Court, Specl. T.*, 1868, *Carpenter, Admr.*, agt. *Danforth*, 52 *Barb.*, 581).

If a banker who knows that he must, within a day or two, assign his property for the benefit of his creditors, conceals his insolvency when receiving money on deposit, and subsequently includes such money in his assignment, the transaction is fraudulent, and will convey no title to his assignee (*Sup. Ct.*, 1870, *Chaffee* agt. *Fort*, 2 *Lans.*, 81).

IV. A purchase of goods by the wife of a defendant, and subsequent delivery of the same to him at his residence, he accepting and retaining the same for the use of his family, is a purchase by him. It is no answer to this liability to say that the act done by the agent was of a fraudulent character, and that the principal did not authorize the commission of a fraud. For a fraud committed by a partner or an agent the principal is not only liable criminally, but he is liable in a civil suit, if the fraud be committed in the transaction of the very business in which the agent was appointed to act (*Story on Ag.*, secs. 452–454; *Griswold* agt. *Haven*, 25 *N. Y.*, 600, 602; *Farmers' & M.* agt. *B. & D. P.*, 16, 125; 3 *Ch. Com. L.*, 209; *N. R. Bank* agt. *Aymer*, 3 *Hill*, 262; *Davis* agt. *Bemis*, 40 *N. Y.*, 453, *n.; Attorney-General* agt. *Sidden*, 1 *Cromp. & Jer.*, 219).

The general doctrine that the knowledge of an agent is the knowledge of the principal, cannot be doubted (*Banks* agt. *Davis*, 2 *Hill*, 451; *Ingalls* agt. *Morgan*, 10 *N. Y.*, 178; *Fulton Bank* agt. *N. Y. & S.*, 4 *Paige*, 127). It must, however, be knowledge acquired in the transaction of the business of his principal, or knowledge acquired in a prior transaction then present to his mind, and which could properly be communicated to his principal (*The Distilled Spirits*, 11 *Wall.*, 356; *Weeser* agt. *Morgan*, 10 *N. Y.*, 178). Neither can it be doubted that, where an agent has power to employ a sub-agent, the acts of the sub-agent, or notice given to him in the transaction of the business, have the same effect as if done or received by the principal (*Story on Ag.*, secs. 452, 454; *Storrs* agt. *City of Utica*, 17 *N. Y.*, 104; *Boyd*

agt. *Vandenberg*, 1 *Barb. Ch.*, 273; *Rourke* agt. *Story*, 4 *E. D. Smith*, 54; *Lincoln* agt. *Battle*, 6 *Wend.*, 475).

A married woman, whose husband has committed a fraud in making a bargain for her in the purchase of real estate, and who has herself accepted the property bargained for, and sold it, and retains the proceeds, is liable for such fraud, although she was wholly ignorant of it at the time, and did not authorize it (*Sup. Court*, 1870, *Graves* agt. *Spier*, 58 *Barb.*, 349).

V. The order granted by Mr. justice LAWRENCE, March 22d, 1876, vacating the order of arrest herein, should be vacated and set aside.

*M. L. Townsend*, for respondent.

I. The affidavit of John T. Green, upon which the order of arrest was granted, is utterly insufficient, and the order was improvidently granted.

1. Green has no personal knowledge of any of the facts stated in his affidavit, and does not give any sources of information justifying him in swearing to the alleged facts. He is merely a bookkeeper in plaintiff's immense store, and would not in the course of his employment have personal knowledge either

*a.* Of the alleged sale. He did not make the sale.

*b.* Or of the execution of the mortgages, or of the value of the property mortgaged — he swears to no examination.

*c.* Or of the alleged removal of any proceeds by the defendant to St. Louis.

*d.* Or of the intent of defendant; and he gives no facts from which any fraudulent intent can be judicially inferred.

*e.* Or of the alleged concealment by defendant of any facts from plaintiffs.

*f.* Or " of which plaintiffs had no knowledge." The plaintiffs themselves can only swear to that.

It is elementary, that where a person makes an affidavit, for

the purpose of an arrest, of facts not within his personal knowledge, he must give the sources of his information (*See cases cited in note to sec.* 181 *of Voorhies' Code*).

So, too, where the arrest is sought upon the ground of fraud in contracting the debt under subdivision 4 of section 179, facts must be stated from which the court can judicially infer the fraud (*Smith* agt. *Jones*, 4 *Rob.*, 656).

This affidavit of Green is obnoxious to all of these principles. It is even perjury, and indictable as such, where a person willfully testifies to what is true in fact, if material, but at the time he testifies does not know it to be true, and has no knowledge or information which would justify him in believing it true (*People* agt. *McKinney*, 3 *Parker Cr.*, 511).

Mr. Green had no knowledge of the facts sworn to in his affidavit, nor any information, so far as appears, justifying him in believing the averments true.

II. It is an absurdity to allege that the defendant contemplated a fraud upon plaintiffs by "executing and placing on record" mortgages on his real estate, or by removing the proceeds of the mortgages to St. Louis (even if true) before contracting the debt with plaintiffs. Fraud cannot be predicated of such facts. It is not pretended that defendant made any statement or representations to induce the plaintiffs to sell the goods, or that any questions were asked of him. He was not, therefore, under any obligation to state to plaintiffs that he had made the mortgages or what he had done with the proceeds, and his omission to inform the plaintiffs of the facts, when he was not interrogated in regard thereto, constituted no fraud, nor was it a fraudulent concealment of any facts. Moreover, the mortgages were subject of public record, having been duly recorded in May, 1875, at the time of their execution, which was nearly six months prior to the alleged purchase of plaintiffs.

III. But the affidavit of Green is absolutely and unqualifiedly false in every material averment. There is not even any truth in the averment of the alleged sale to the defend-

ant except constructively (*See opposing affidavits of defendant and his wife*).

1. The defendant personally never purchased or selected a single dollar's worth of the goods, nor was he present when they were purchased, nor had he knowledge at the time of the purchase.

2. The goods were all purchased and selected by defendant's wife, and in the same manner as she had purchased of plaintiffs for about twenty years. The amount, though apparently large, was no greater than she had previously purchased during a similar period of time (about three months), nor was the amount of the purchases for that period of time large for the necessities of the family, consisting of herself, husband and fifteen children.

3. The goods were purchased in the customary way, as had been the custom between Mrs. Strasburger and plaintiffs for a long time, of different salesmen, over the counters, paying for some cash down; and, as appears by the bill of particulars annexed to the complaint, returning some of the goods which she found she did not want. The remainder were charged to defendant, and virtually a credit of thirty days given according to the established custom between plaintiffs and defendant, which credit had not expired in respect of the sales in December when this action was commenced. Nor had the bill of the goods been rendered to defendant or any demand of payment made.

IV. When Mrs. Strasburger bought the goods she made no statements or representations as to her husband's pecuniary condition or otherwise; no questions were asked her. In fact, she did not know of defendant's embarrassed condition until he felt compelled to make an assignment. This is sworn to by both Mr. and Mrs. Strasburger. No inference of fraudulent intent on the part of Mrs. Strasburger can be drawn from the facts, and any charge or insinuation by plaintiffs to that effect would be a gross outrage upon her.

V. The charge, " that the defendant was guilty of fraud

upon the plaintiffs in contracting the debt for which the action is brought " cannot be predicated of any facts before the court.

1. He has been a successful merchant in this city for upwards of thirty years, and always paid his creditors in full until his present embarrassment.

2. The mortgages he executed on his real estate were made and publicly recorded about six months prior to the purchases made by his wife. He fully explains the reasons for giving these mortgages, and the consideration thereof; one was in payment of a debt, and the other to raise money to use in his business, and which he thus used.

3. He fully explains (which was unnecessary for the motion) the causes which led to his present embarrassment. His books show $90,000 of uncollectible accounts and judgments, besides losing nearly all the capital which he paid into his firm in St. Louis last summer.

4. And finally, he personally did not contract the debt; he made no representations, and did not conceal any thing.

VI. The order of arrest was granted upon alleged fraud in contracting the debt, viz., concealing from plaintiffs facts which he should have disclosed; and it must stand or fall upon that alone. Plaintiffs had not a right in opposition to the motion to read their additional affidavits; they do not corroborate any statement's in Green's affidavit, or furnish any evidence of fraud upon plaintiffs.

VII. The order appealed from should be affirmed, with costs.

DANIELS, J.—This action was brought to recover the sum of $2,304.23, which was the purchase-price of dry goods sold and delivered by the plaintiffs on the defendant's credit, in the months of November and December, 1875. The goods were purchased by the defendant's wife for family use, and were delivered at the defendant's residence, in the city of New York. At and before the times of the purchases the

defendant was insolvent and in failing circumstances, and, on the 14th day of December, 1875, made a general assignment for the benefit of his creditors, and closed up the business previously carried on by him as a dealer in jewelry and watches. It appeared that he bought watches, watch movements and clocks during the last of August, and in the fall of 1875, of two different persons, upon representations of the solvency of a firm in St. Louis of which he was a member, amounting to over $14,500, of which about $12,500 still remain unpaid. And it was stated in one of the affidavits produced on the hearing of the motion, that the defendant had purchased of the firm of Arnold, Constable & Co., during the same fall, over $2,500 worth of dry goods, and about $1,000 worth of carpets, which had not been paid for.

When the goods were purchased at the plaintiff's store no representations were made concerning the defendant's circumstances; but as his wife had previously purchased goods there in the defendant's name, which were afterward paid for by him, no suspicion as to his solvency or credit seems to have existed on the part of plaintiffs. No term of credit was agreed upon, but the bill was not presented until the latter part of December, and then the defendant failed to pay it.

The plaintiffs insisted that the goods were purchased and procured from them fraudulently, and that the fraud was perpetrated by intentionally concealing from them the condition of the defendant's circumstances, and upon that theory the order of arrest was made. If his pecuniary condition had been known to the plaintiffs at the time of the sale, it is entirely evident that no credit would have been given for the goods; for he was then insolvent and his early failure was actually inevitable. No prudent dealer would, under such circumstances, sell him goods upon credit. And that fact was undoubtedly well known to both the defendant and his wife. They, however, swear that he did not at the time know of the purchases, and that she had no knowledge or information of his pecuniary condition. But whether that was true or

not must be determined from the circumstances affecting the transaction, as well as the statements contained in the affidavits. She stated that she had frequently made purchases from the plaintiffs for her family amounting to from $1,500 to $2,500, during the period of a few months, while in contradiction of that statement it was shown from the plaintiffs' books that in no one month had the purchases amounted to the sum of $100. And from the 2d of December, 1874, to the 22d of October, 1875, they amounted to no more than $268.36. This is a very important contradiction of a material statement made by her, tending to throw a great degree of discredit upon her affidavit. If she had made such purchases previously, as she stated she had, those made in November and December would not have appeared so unreasonable or extraordinary. But, as she did not do that, the fact that her last purchases were so extensive has a direct tendency to establish the conclusion that they were not prompted by the mere motive of supplying the wants of the defendant's family. That conclusion is fortified by her own statement, that in the fall of 1875 she bought other bills of goods from the plaintiffs, for cash and on credit, for the use of her family. For, after making them, there would seem to be no reason for supposing that any necessity could exist for those procured by her in November and December, particularly as over $2,500 worth of dry-goods were bought the same fall from Arnold, Constable & Co. These facts are entirely inconsistent with the truth of the statement that the goods were needed for family use when they were bought, and they indicate the probability that another motive prompted the purchases. The one assigned was evidently untrue; and, that being so, the quantity of goods bought, the early failure of the defendant and the fact that the family could not, at the time, have needed the goods for its use, create, as well as justify, the conclusion that the purchases were made under the expectation of an early failure, which would prevent the plaintiffs from obtaining payment. Proof of fraud, which

always endeavors to guard itself against discovery by conceal-
ment, is peculiarly dependent upon the force of circumstances
for its support, and when they are so decided as satisfactorily
to justify the conclusion that an intent to defraud existed, it
is not to be rejected because of the positive denial of it by the
parties concerned in the commission of the wrong. That is
the nature of the circumstances shown in this case. They are
wholly inconsistent with the truth of the assertion that the
goods were purchased because they were then needed for the
use of defendant's family, and they indicate the design to
have been to make the purchases because of the impending
and prospective failure of the defendant, the effect of which
would be to prevent the plaintiffs from obtaining payment of
their debt. The coincident circumstances indicate no other
possible conclusion, and that, under the authorities, was suffi-
cient to constitute a fraud in the contraction of the debt,
which was all that the Code required to entitle the plaintiffs
to an order of arrest.

The defendant's wife may not have been informed in direct
terms of her husband's insolvent condition, but to produce the
understanding on her part that such was the fact did not
require any thing so unequivocal. There are various other
modes in which that result could be produced without
expressing it in words, that would be consistent with the lit-
eral truth of his statement that he had not informed her of his
pecuniary condition, and that of her own, that she had no
knowledge that he had become embarrassed. And her
conduct can be accounted for on no other supposition than
that if she had not been informed, and did not know, she
still understood that his pecuniary condition had become
extremely critical, and that it was desirable that large pur-
chases should be made before the facts should be known
which would at once discredit him. Her conduct was not
rationally accountable on any other practicable theory. And
upon that the probability is very decided that the goods were
purchased by her with the expectation and design that they

would not be paid for. And that combined all the elements of actual fraud (*Brown* agt. *Montgomery*, 20 *N. Y.*, 287; *King* agt. *Phillips*, 8 *Bos.*, 603; *Carpenter* agt. *Danforth*, 52 *Barb.*, 581; *Johnson* agt. *Monell*, 2 *Abb. Ct. Appeals Decisions*, 470).

In contracting the debt by means of it, she acted, as she had done before, as the agent of her husband, the defendant, and the goods were delivered at his residence. So large a quantity could hardly be received there without his knowledge of them, and of the means by which they had been procured; and that was sufficient to render him an actual participant in the transactions. That he did know of the receipt of the goods at his residence was not denied, either by himself or his wife, as it probably would have been if he had not understood such to have been the fact; and when he was requested to pay the bill, he in no way indicated any disposition to part with the fruits of the fraud that had been committed.

In *Bennett* agt. *Judson* (21 *N. Y.*, 238), the principal was held liable for the consequences of his agent's fraud, even when it was perpetrated without his knowledge or authority, in the transaction of business that had been authorized by him. It was there stated to be the law, that "if an agent defrauds the person with whom he is dealing, the principal, not having authorized or participated in the wrong, may, no doubt, rescind when he discovers the fraud, on the terms of making complete restitution; but so long as he retains the benefits of the dealings, he cannot claim immunity on the ground that the fraud was committed by his agent and not by himself" (*Id.*, 239, 240); and the soundness of that proposition has not been questioned (*Griswold* agt. *Havers*, 25 *id.*, 595, 599–602; *Davis* agt. *Bernio*, 40 *N. Y.*, 454; *Greaves* agt. *Spier*, 58 *Barb.*, 349, 366, 367).

The defendant's wife bought the goods in his name and under his authority. They were received as his for the use of his family. He had the benefit of them, and

Stewart agt. Strasburger.

became liable to the plaintiffs for the payment of the purchase. That was fraudulently incurred, and he was lawfully held to bail by the order made, for the debt that had been created.

The order appealed from should be reversed, with ten dollars costs, and also disbursements, and the motion made should be denied with costs.

DAVIS, *P. J.*— I am impressed with the belief that the larger purchases were made of plaintiffs and others on the eve of failure with the intention of providing for that event. The courts should scrutinize with severity transactions so suspicious in their character, otherwise dealers may be victimized by customers in whom they have implicit confidence, but whose circumstances lead them to take advantage of such confidence in preparation for approaching bankruptcy. I concur in the conclusions reached by my brother DANIELS.