## THE VERONA CENTRAL CHEESE COMPANY, Appellant, *v.* JOSEPH P. MURTAUGH, Respondent.

A penal statute will not be extended by implication or construction to cases within the mischief if they are not at the same time within the terms of the act fairly and reasonably interpreted.

The intent of section 1 of the act to protect butter and cheese manufacturers (chap. 36, Laws of 1865), which imposes a penalty upon any person who shall knowingly sell, supply or bring to be manufactured to any cheese manufactory diluted, adulterated or skimmed milk, is to punish only for actual and intentional violation of its provisions. A party sought to be charged is only liable where the offence is committed by his authority or with his knowledge and assent.

Actual knowledge of the deteriorated quality of each or any particular delivery need not be shown or express authority to dilute, adulterate or depreciate the quality of the milk in any particular manner or to any particular extent. It is sufficient to prove knowledge by the defendant that his servants and agents did deliver bad milk or a general authority to them to do so. This knowledge or authority may be implied from circumstances.

Defendant was at and about his farm managing and controlling it. His servants prepared and delivered at plaintiff's factory diluted and skimmed milk. *Held*, that the evidence, unrebutted by proof that defendant had no knowledge and was in no way accessory to the acts complained of, raised a presumption of fact that they were authorized by him, and required the submission of that question to the jury. A nonsuit was, therefore, error.

(Argued November 15, 1872; decided November 19, 1872.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order denying a motion for a new trial, and ordering judgment of dismissal of complaint and nonsuit. (Reported below, 4 Lans., 17.)

The action was brought to recover penalties given by chap. 361 of the Laws of 1865 for delivering to plaintiff's factory diluted and skimmed milk.

Defendant lived upon, managed and controlled his farm and the work thereon. His wife, son and daughter milked the cows, prepared the milk for the factory, and delivered it. They delivered watered and skimmed milk. Upon the trial,

at the conclusion of plaintiff's evidence, defendant's counsel moved for a nonsuit upon the ground that the evidence did not show knowledge on the part of defendant of the wrongful acts. The court granted the motion and ordered exceptions to be heard at first instance at General Term.

*John D. Kernan* for the appellant. One personally innocent is liable for penalties given by statute for unlawful acts of his agents or servants in the conduct of his business. (*Davis et al.* v. *Bemis*, 40 N. Y., 453, note; *Lee* v. *Village of Sandy Hill*, id., 442, 448, 449; *Hern* v. *Nichols*, 1 Salk., 289; 40 N. Y., 454.) The evidence was *prima facie* sufficient to charge defendant. (*Locke* v. *Stearns*, 1 Metc., 562, 563; *Commonwealth* v. *Nichols*, 10 id., 239; *Attorney-General* v. *Sidden*, 1 Cromp. & Jer., 219; Story on Agency, 7th ed., 560, etc., note; Roscoe Cr. Evi., 4th ed., 657, 658.) The rule of strict construction applicable in a criminal action does not apply here. (*Attorney-General* v. *Sidden*, 1 Cromp. & Jer., 225; *Locke* v. *Stearns*, 1 Metc., 563; *Bennett* v. *Judson*, 21 N. Y., 286.)

*I. N. Messenger* for the respondent. Plaintiff's case was not brought within the statute, and the nonsuit was properly granted. (Hawkins' P. C., Curw. ed., 188, § 16; 1 Bish. Crim. Law, § 250, and notes; 2 East, 641; 10 Serg. & Rawl., 393.) Where the law presumes the defendant's innocence, it presumes the affirmative, and not the negative. (*Williams* v. *East India Co.*, 3 East, 182.) Knowingly means actual, and not constructive, inferential or even presumptive knowledge. (5 Comst., 210; 22 Barb., 662; 21 id., 212; see also 2 Caines, 97.) If an agent's authority can be executed lawfully, it is not to be extended by construction to unlawful acts so as to render his principal liable in a criminal action or an action for a penalty. (*Clark* v. *Nat. Bank*, 3 Duer, 241–249; *Frazer* v. *Freeman*, ALLEN, J., not rep.; 1 Bish. Crim. Law, §§ 392, 393.)

ALLEN, J. A principal is confessedly liable for the acts of

his agent, within the scope of his general authority. A master is responsible for the fraudulent misrepresentation or deceit, as well as for the negligence or other wrongful act of a servant, if committed in the business of his master, and within the scope of the servant's employment, although, in doing it, he departed from or violated the instructions of the master. (*Higgins* v. *Watervliet T. & R. Co.*, 46 N. Y., 23; *Durst* v. *Burton*, 47 id., 167.) So, too, the principal is chargeable with notice to or knowledge by the agent of matters affecting the relation or obligations of the principal to third persons, if the agent has such notice or knowledge at the time he is concerned for and acting in behalf of his principal in the execution of his agency. (*Bank of U. S.* v. *Davis*, 2 Hill, 451; *Weisser* v. *Denison*, 6 Seld., 68; *Dresser* v. *Norwood*, 17 C. B. [N. S.], 466.) This knowledge of the agent is imputed to the principal, and held as constructive notice to him upon general principles of public policy. It is presumed that the agent has communicated the facts within his knowledge to his principal, and if he has not, that nevertheless, the latter having entrusted the agent in a particular business, it is more reasonable that, where one party must suffer by the misconduct of another, he should sustain the loss who has reposed the confidence in the agent, rather than the third person who has given no such confidence.

In the cases suggested, the principal cannot exonerate himself from liability for the acts of his agent by showing that they were committed in violation of his instruction, or relieve himself from the consequences resulting from actual notice or knowledge of the facts communicated to his agent, by showing utter ignorance on his part. The liability is as absolute as if the acts had been performed by the principal in person, or the knowledge of the particular facts had been actually communicated to him.

Within these general rules it is palpable that the defendant is liable to the parties injured by the adulteration or dilution of the milk delivered in his behalf to the factory, for the damages actually sustained, and such liability does not depend

upon the statute, but upon the well established principles of the common law. But this is an action to recover a penalty given by the statute (Laws of 1865, chap. 361), and although the penalty is given to the party injured, the act is penal, and not remedial; that is, it authorizes a recovery within certain limits as to amount, for each offence, without respect to the actual damage caused by the fraud, and is not intended as a cumulative remedy for the loss occasioned by the wrong, or a substitute for the common-law action. It is punitive and penal in its character. Such an act cannot be extended by implication or construction to cases within the mischief, if they are not at the same time, within the terms of the act, fairly and reasonably interpreted. Laws imposing a penalty and giving penal actions must, like other statutes, receive a reasonable construction. While they cannot be enlarged by construction, effect will be given to the intent of the legislature, as deducible from the language employed, but they will not be extended by implication to cases not fairly within the intent, as declared by the words. (*Strong* v. *Stebbins*, 5 Cow., 210.) The act which gives the penalty sued for, only subjects him who shall *knowingly* sell, supply, or bring to be manufactured, to any cheese factory, diluted, adulterated or skimmed milk. It is not the act of selling, supplying or bringing to the factory the milk condemned by the law, that gives the penalty. If so, it would be immaterial whether the owner and proprietor sold or brought the milk in person or by his servants, or the agency of third persons. The act might be regarded as the act of the principal, and he made liable, although done without his personal knowledge or intervention. *Davis* v. *Bemis* (40 N. Y., 453, note) may be conceded to have been well decided.

But the word "knowingly," in the statute now under review, qualifies the acts condemned, and only makes the offence penal when committed by the authority or with the knowledge and assent of the party sought to be charged. The act designedly distinguishes between actual and constructive participation in and assent to the wrongful act, and between

actual or personal, and imputed or constructive notice or knowledge of facts constituting the offence.

The intent of the act is to punish an individual only for an actual and intentional violation of its provisions. The act need not be personally committed by the party charged, but if authorized by him, he is liable for the penalty. Effect cannot be given to the act in its present form, unless it is thus restricted in its application and operation. Upon any other interpretation, the word "knowingly" is of no effect, and has no meaning. It can hardly be claimed that one would be liable for a penalty under a statute like this, even without the word "knowingly," or other like qualification, for delivering, by mistake and in good faith, milk within the condemnations, but of which neither he or any person in his employ had any knowledge; that which might have become diluted or adulterated by accident, or by the malicious acts of strangers. The extent of the liability in such cases would be the damages actually sustained by the parties injured.

A violation of the statute and a right to the penalty, then, can only be established by proof of a delivery of milk of the character named in the act, with the knowledge or assent, or by authority of the defendant. It would not be necessary to prove actual knowledge of the deteriorated quality of each or any particular delivery, or express authority to dilute or adulterate or depreciate the quality of the milk in any particular manner, or to any particular extent.

It would be sufficient to prove knowledge by the defendant that his servants or agents did deliver bad milk, or a general authority to them to do so. And this authority may be implied from circumstances. It then becomes a question of evidence. That milk diluted and skimmed was delivered by the defendant to the factory is not disputed, and that he did so "knowingly," that is, with knowledge of the inferior quality of the milk, and that it had been tampered with, may, like any other material fact, be proved by circumstances. If there was any evidence proper for the consideration of the jury, bearing upon

the question, the cause should not have been taken from the jury by a nonsuit and a dismissal of the complaint.

The evidence is very brief and simple. The defendant, so far as appears, carried on his farm, and was at and about his farm, managing and controlling his business in the ordinary way, during the time of the delivery of the milk to the plaintiff. His wife and children aided him, and performed certain services, and among other things they milked the cows and prepared the milk and put it in cans for delivery at the factory, and a son of the defendant, or some other servant, delivered the milk to the plaintiff.

The wrongful acts alleged were committed, if at all, by the wife and daughter of the defendant in the performance of services in his behalf, and in his interest, and not in the interest of or the agents of any third person. The relation of master and servant existed between the defendant and his wife and children in respect to the preparation and sending the milk to the factory; and it will not be assumed, in the absence of evidence to the contrary, that acts in the course of the service, tending to benefit the defendant, were without his authority. One is liable for the unlawful sale of spiritous liquors on his premises, with his assent, by a servant or agent employed in his business. But the sale by his servant and agent is only *prima facie* evidence of the assent of the employer, and may be rebutted. (*Rex* v. *Almon*, 5 Bur., 2686; *Commonwealth* v. *Nichols*, 10 Met., 259.) In *People* v. *Hulbut* (4 Den., 133) the illegal sale was by the son of the defendant, and the prosecutor was permitted to prove, as an additional circumstance in aid of the presumption that it was by authority of the defendant, that he kept a bar with bottles in it. In *Attorney-General* v. *Siddon* (1 C. & J., 219) a trader was held liable for concealing smuggled goods, the illegal act having been performed by a servant in the conduct of the business, and in the absence of the master. The Lord Chief Baron was of the opinion that the presumption was, unless the contrary was shown, that the act was authorized by the defendant. Other judges regarded the act as *prima*

*facie* the act of the defendant, and all agreed that the master was at liberty to have produced evidence to rebut the *prima facie* case, but, as said by Bayley, B., "in the absence of any evidence to rebut that case, it was rightly left to the jury, and the jury were bound to consider it the master's act." *The Attorney-General* v. *Riddle* (2 C. & J., 493) is in principle very like the case in hand. There a wife was proved to have authority from her husband, a paper maker, to do certain acts in his trade, and she pledged paper which had no proper label or stamp on it. In an action for the penalty incurred under the revenue laws against the husband, the Chief Baron upon the trial directed a verdict for the defendant. The verdict was set aside, upon motion, on the ground that the authority of the wife to do this particular act was a question for the jury.

Authority from the defendant, express or implied, to his servants, to tamper with the milk, will be equivalent to and supply the want of evidence of actual knowledge by him of the improper treatment of the milk in each instance, and if that authority is proved to the satisfaction of the jury, the action is sustained. Like other presumptions of fact or circumstantial evidence tending to prove a fact, it may be rebutted by evidence that the defendant did not in any way authorize it, and had no knowledge of it. But under the circumstances of the case the jury would, upon the evidence unexplained and uncontradicted, have been authorized to find that the acts of the wife and daughters were authorized by the defendant. It was within the power of the defendant to rebut the *prima facie* case made by the plaintiff, if he, in fact, was innocent, but it will not answer to suffer a party to escape the consequences of acts like those complained of, by keeping in the background and putting forward irresponsible agents, and thus secure the benefits and escape the perils of the wrong. The presumption of authority, from the facts proved, is not one of law, and therefore conclusive, but of fact, and it is for the jury to determine whether the evidence warrants it.

A similar principle prevails in the law of libel, to the extent

that the publisher is *prima facie* liable for libels published by his servants, but it is now well established that he can exonerate himself from liability by showing that he was in no way accessory to the publication. (Roscoe's Cr. Ev., 6th Am. ed., 622, and cases cited.) But it was competent for the defendant here to prove that he had no knowledge, and was in no way accessory to the wrongful acts complained of, or he may insist, to the jury, that the evidence does not establish his guilty knowledge of or complicity with the acts of his wife and daughters. There was, however, competent evidence tending to connect the defendant with the offence, and it should have been submitted to the jury.

The judgment should be reversed, and a new trial granted.

CHURCH, Ch. J., FOLGER, ANDREWS and RAPALLO, JJ., concur.

GROVER and PECKHAM, JJ., concur in result.

Judgment reversed.