THE FIRE DEPARTMENT OF THE CITY OF NEW YORK, Respondent, *against* JOHN STETSON, Appellant.

(Decided February 7th, 1887.)

The provision of statute relating to construction of passage-ways and exits in theatres, declaring that the same shall be kept free from chairs, etc., and that no person shall be allowed to stand therein during any performance (L. 1885 c. 456 § 28), should be literally construed, and as so construed does not give the manager or proprietor of the theatre any discretion to allow persons to stand in the aisle or passage-way, even though the number be not so great as to prevent free exit in case of danger.

To recover the penalty given for a violation of such act, it is not necessary to prove that the manager of the theatre knew that any persons were standing in the passage-way at the time in question, or that he gave permission to any one to occupy the passage-way. That a number of tickets for a performance were sold by defendant's agents, after they knew that the seats in the house were filled, is sufficient proof to sustain a judgment, in the absence of evidence that such sale was in opposition to defendant's wishes.

MOTION for re-argument or for leave to appeal to the Court of Appeals from an order affirming a judgment of the District Court in the City of New York for the Seventh Judicial District.

The action was brought to recover a penalty for violating the act of 1885 (L. 1885 c. 456 § 28), in permitting persons to stand in the passage-way of defendant's theatre.

The facts are stated in the opinion.

PER CURIAM. — [Present, LARREMORE, Ch. J., ALLEN and BOOKSTAVER, JJ.] — We do not allow an appeal to the Court of Appeals in actions that originated in a district

court unless a novel question is presented that seems to us of sufficient importance to require consideration by the court of last resort. Where the law is well settled, as it is in the case before us, there is no reason for granting permission to a dissatisfied suitor to carry his suit to the Court of Appeals.

We are asked to nullify a statute, the meaning of which is plain, by applying to it rules of construction that are resorted to only where a statute is ambiguous, or where a literal construction of its terms would involve an absurdity, or work a glaring injustice. The statute that we are called to consider is not ambiguous, nor will a construction of it that gives effect to its obvious intention do any injustice to any one. The object that the legislature had in view was a beneficent one; it was to prevent the awful sacrifice of human life that is certain to occur if no limit be placed upon the practice of allowing the means of ingress and egress in theatres to be blocked by throngs of people who, when a play is attractive, are admitted by theatrical managers long after every seat is occupied, and when, to use the language of the notices, there is "standing room only." The fire at the Brooklyn Theatre left a profound impression upon the public mind, and the feeling was general that the passage-ways for exit should be large enough to give an audience a chance for their lives in case of danger, and that those passage-ways should be kept clear, even when a strong pecuniary temptation made the manager of a theatre willing to take the risk of filling them with spectators. It was not left to the manager, whose pecuniary interest might blind his eyes, to determine how the ways of exit should be laid out, but the statute explicitly provides that "in all places of public amusement already erected, the halls, doors, stairways, seats, and aisles, shall be so arranged to facilitate egress in case of fire or accident, as the superintendent of buildings, with the concurrence of the board of fire commissioners, may deem necessary for the public protection." It will be observed that the legislature was not content with placing under the control of the superintendent of

Fire Department *v.* Stetson.

buildings the construction of the means of exit in places of amusement thereafter to be built, but it gave to the superintendent the right to prescribe the arrangement of the avenues of entrance even in buildings already erected. It is for the superintendent to decide how wide the aisles and stairways shall be, and it was presumed that when the superintendent considered them sufficient, he would not needlessly diminish the seating capacity of the house by making them any wider than is absolutely necessary for the public safety. Hence it became necessary to provide that these avenues should be kept clear, and therefore it was made the law that " all aisles and passage-ways shall be kept free from camp-stools, chairs, sofas, stoves, and other obstructions; and that no person or persons shall be allowed to stand in or occupy any of the aisles or passage-ways during any performance."

Notwithstanding the plain and clear language of the act, the counsel for the defendant contends that the manager has a right to place a part of the audience in the aisles and passage-ways, if the number be not so great as to prevent free exit in case of danger. It is obviously impossible for any man to say how many people would, in a panic, block up a narrow passage-way. Certain it is that in a rush some of the weaker will be knocked down and trampled under foot, and that their bodies will effectually obstruct the way. It is not a question as to how long it may take to empty a theatre where everybody is cool, and moving leisurely, but as to whether it is safe to allow passage-ways to be blocked when a crowd of panic-stricken people are making a mad rush for the doors. The legislature has made its meaning perfectly clear, and has said that no person shall be allowed to stand in the passage-ways, and it is not for any judge to say that, although the legislature has forbidden it, the manager is at liberty to allow forty or fifty people to occupy the ways of exit. The counsel for the defendant argues that it is unreasonable to construe the act so as to deprive the manager of the opportunity to sell standing room in the aisles and passage-ways when he may do so

without endangering life or limb.   But the answer is a
plain one ; the intention of the legislature is so obvious that
it requires nullification, not construction, to defeat it :
furthermore, a hecatomb of lives might be lost if the man-
ager should make a slight mistake as to the number that he
might pack with safety in an aisle or passage-way.

We reject, therefore, any other than the literal construc-
tion of the provision that inhibits the standing of spectators
in the passage-way.

The evidence fully sustains the judgment that was given
for the plaintiffs.   It was not necessary to prove that the
defendant knew that there were persons standing in the
passage-ways on the nights in question or that he gave per-
mission to any one, on those occasions, to occupy a part of
a passage-way.   Even if the statute did not impose a penalty
unless the defendant knowingly permitted the avenues for
exit to be occupied, it would have been competent to prove
that knowledge by circumstantial evidence.   The case of
the *Verona Cheese Co.* v. *Murtaugh* (50 N. Y. 314) is a
precedent useful to one charged with the duty of proving
the case for the plaintiff in an action for a penalty.   It is
sufficient to prove, even where a guilty knowledge is the
gravamen of the offense, that the act complained of was
done in pursuance of a general authority given by the de-
fendant to his servants or agents.   That authority may be
implied from circumstances.   If it appear that an act that
is for the interest of the defendant, is done by his servants
in the performance of their duties as his employes, it will
not be assumed, in the absence of evidence, that it was
done without his authority.   It is, however, competent
for the defendant to show, if he can, that the wrongful act
was done in opposition to his wishes ; then he ought not to
be held liable.   But his disavowal of the act is not con-
clusive evidence.   Like any denial of guilt, it may be over-
come by circumstantial evidence.   To what weight would
a denial by the defendant of responsibility for the presence
of people in the passage-ways have been entitled in this
case?   His men sold tickets of admission that gave the

Fire Department *v.* Stetson.

holders no right to a seat, for, after every seat was occupied or sold, the sale of tickets must have continued, not only once, but on many occasions, until a number of people, sometimes as many as sixty, were standing in the passage-way in the rear of the orchestra circle. One could not get through them without shoving. The ushers saw this. They must have done so, for the defendant's stage carpenter admits that he saw men standing in the passage-ways on several occasions. Would any one believe that the ticket-sellers and the ushers had entered into a conspiracy to thwart the defendant's good intentions? Who got the money for this violation of the law? As was said by Judge W. F. ALLEN in the case cited, "it will not answer to suffer a party to escape the consequences of acts like those complained of, by keeping in the background, and putting forward irresponsible agents, and thus secure the benefit, and escape the perils, of the wrong." "The presumption of authority from the fact proved, is not one of law, and therefore conclusive, but of fact, and therefore it is for the jury to determine whether the evidence warrants it."

Of course, if it should appear that, despite the *bona fide* efforts of the defendant's servants, there was a knot of two or three persons tarrying for a moment or two in a passage-way, no sensible justice would hold that the statute was violated; but upon the facts indisputably proved in this case, the defendant was liable, notwithstanding his residence in Boston. It was perfectly proper for the justice to draw the conclusion that the defendant authorized his servants to allow persons to stand in the passage-ways.

In the case of the *Verona Co.* v. *Murtaugh* (*supra*), the acts complained of were done by the wife, the daughters, and a son of the defendant, and there was no evidence directly proving that the defendant himself took any part in the matter, but yet, as he derived profit from the fraud that was practised, and as the members of his family were in his service, it was decided that it was not improper to infer that he was aware of the acts that were done for his

benefit, and upon such an inference to hold him liable for the penalty.

In the case of *Sturges* v. *Maitland* (Anthon's N. P. p. 208), which was tried before Chancellor KENT, and affirmed by the Supreme Court, it was held that the defendant might be liable for a penalty, though he was absent in Virginia at the time that his agent's clerk did the unlawful act; and that, even if an intent to violate the law were wanting, the negligence of the clerk might be so gross that a criminal intent might be imputed to him, for which the defendant would be liable to a penalty.. In that case it appeared that the defendant, by his agent's clerk, had laded some flour aboard one of his vessels, without having it inspected and branded, an act that was punishable by a penalty of five dollars for every barrel so shipped.

In *The People* v. *Hulburt* (4 Denio), the prisoner was convicted of selling liquor without a license, though the liquor was sold by his son. The prisoner was connected with the act by proof that he kept the house in which the offense was committed, and that he kept a bar with bottles in it.

In *Att. Gen.* v. *Siddons* (1 Crompt. & J. 220), it appeared that the master was absent, and that some smuggled tobacco was discovered in his cellar. His clerk, for the purpose of protecting the goods from seizure, wrongfully obtained a permit for the tobacco, and thereby did an act for which a penalty was prescribed. The master was held liable for the penalty, for the act was for the master's benefit, and the obtaining of permits was in the course of the clerk's ordinary duties. The presumption, therefore, was that the act was authorized, and it was the duty of the master to rebut that presumption.

In *Davis* v. *Bemis* (40 N. Y. 453), it appeared that the agents of the defendant made and presented to the collector of customs certain false bills of lading, in the interest of the defendant, and so procured clearances of some of the defendant's vessels. As the act was done for the defendant's benefit, by his employes, who were acting in the line

of their ordinary duties, it was held that the defendant, though he took no part in the fraud, was liable for the penalty imposed upon him who presents a false bill of lading to a collector.

There can be no doubt, therefore, that the decision of the district court holding the defendant liable, was fully supported by the authorities, and that the judgment was rightly affirmed.

The motion for a re-argument, or for leave to go to the Court of Appeals, is denied, with costs.

Motion denied, with costs.