### WESTCHESTER COUNTY v. DRESSNER.

(Supreme Court, Appellate Division, Second Department. December 31, 1897.)

1. PENAL STATUTE—REPEAL—EFFECT.
   The repeal of a penal statute, without any saving clause, takes away all right to proceed thereunder for the recovery of a penalty, even in an action pending when the repeal takes effect.

2. DRUGGISTS—SALE OF MEDICINE WITHOUT LICENSE.
   The provision of section 187 of the public health law, that article 11 (which includes section 186, prohibiting the practice of pharmacy without a license) shall not apply to the sale of the usual domestic remedies by retail dealers in the "rural districts," does not operate to protect an unlicensed dealer in a village of 12,000 inhabitants, the term "rural districts" being defined by section 187 to mean "small villages and country districts having no store where pharmacy is practiced."

3. SAME—SALE BY SERVANT.
   Where, in an action under the public health law, to recover a penalty for the sale of medicine without a license, it distinctly appears that the alleged violation was committed, not by the defendant personally, but by his servant, the defendant is entitled to show that the act was committed against his express directions, if given in good faith and with an honest intent and expectation that they would be obeyed. Explicit evidence of such directions is relevant upon the issue of the servant's authority, and, though not conclusive, is admissible, and is sufficient to require a submission to the jury.

Appeal from trial term, Westchester county.

Action by Westchester county against J. H. Dressner. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Eugene B. Travis, for appellant.
Edward H. Burdick, for respondent.

WILLARD BARTLETT, J. This is an action to recover two penalties, of $50 each, under section 190 of the public health law. The

case was tried on May 7, 1897, and resulted in a verdict and judgment against the defendant for the whole amount claimed, the verdict being directed by the court. Section 186 of the public health law, as amended and in force since June 4, 1896, provides that no person shall hereafter practice as a pharmacist, unless a license has been granted to such person by the state board of pharmacy. Section 187, which is contained in the same article of the statute (article 11), declares that the term "practice of pharmacy," when used therein, "means the compounding of prescriptions or of any United States pharmacopœial preparation, or of any drug or poison, to be used as medicines, or the retailing of any drug or poison," except as provided for in that section. The statute further provides that any person violating any provision of article 11 shall forfeit $50 for every such violation to the county where it occurs, which may be sued for and recovered in the name of the county by the state board of pharmacy.

The present action was instituted in the name of Westchester county under the authority thus conferred by the public health law. The complaint alleges that the defendant has never received a license from the state board of pharmacy authorizing him to practice as a pharmacist, and charges him with two violations of the prohibition against the practice of pharmacy by an unlicensed person. The first charge is that on February 8, 1897, at the village of Peekskill, he sold at retail a quantity of paregoric. The second charge is that, on the following day, at the same place, he sold at retail a quantity of Rochelle salts. The appeal book does not show when the action was begun, but at the time the complaint was verified, on February 26, 1897, it appears to have been unlawful for a person who was not licensed as a pharmacist to sell Rochelle salts at retail. Between that date, however, and the time of the trial, section 187 of the public health law had been amended, the amendatory statute taking effect on the 16th day of April, 1897 (Laws 1897, c. 297). This amendment made material changes in section 187, which limits the application of article 11 of the public health law; and that section, as thus amended and in force at the time of the trial, expressly declares that article 11 shall not apply to the sale by retail dealers or merchants of Rochelle salts. The alteration thus made in the law disposes of the present prosecution, so far as it is based upon the sale of Rochelle salts by the defendant. The repeal of a penal statute, without any saving clause, takes away all right to proceed thereunder for the recovery of a penalty, even if the repeal does not take effect until after verdict. Butler v. Palmer, 1 Hill, 324; Curtis v. Leavitt, 15 N. Y., on page 153; Sturgis v. Spofford, 45 N. Y. 446, 452; Victory, etc., Co. v. Beecher, 97 N. Y. 651.

In regard to the cause of action arising out of the alleged sale of paregoric, a different question is presented. Section 187 of the public health law, as in force at the time of the trial and now, provides that article 11 shall not apply to the sale of the usual domestic remedies by retail dealers in the rural districts. The term "usual domestic remedies" is then defined to include only such remedies as may be safely employed without the advice of a physician, such as paregoric, magnesia, aloes, myrrh, and other like preparations. These

limitations would save the defendant from liability for selling paregoric if he could be considered a retail dealer in a rural district; but the term "rural districts" employed in the statute is declared by the law itself to apply only to small villages and country districts having no store where pharmacy is practiced.   A village of the size of Peekskill, having upward of 12,000 inhabitants, can hardly be regarded as coming within this category.   On this branch of the case, therefore, I think the complaint states a good cause of action against the defendant.

The trial court, however, erred in excluding certain evidence which he offered to exonerate himself from liability, and in directing a verdict against him as the proof stood at the close of the evidence on both sides.   There was no pretense that the paregoric was sold by the defendant himself.   It was purchased by a woman in the employment of the state board of pharmacy, who goes from place to place to detect violations of the public health law.   She testified that she bought it at the defendant's store from a boy named Mortimer Wright, with whom she seems to have had no conversation beyond asking for the drug.   The testimony of the defendant himself tended to show that the paregoric was sold against his express instructions by Mortimer Wright, his clerk.   "I did not sell or offer the goods in evidence for sale," he testified, "and have not sold, or offered for sale, since I was notified not to do so, in the fall of 1896.   I put all that kind of stuff away then, that I had on hand, and also instructed the young man, my clerk, and my family not to sell, or offer for sale, any more of it, it being against the law."   After this evidence was given the record states that it was objected to, that the objection was sustained, and that an exception was taken by the defendant's counsel; from which it may be inferred that the learned trial judge disregarded it when he came to direct a verdict.   Further on in the trial he sustained an objection to the following question, which was put to the defendant upon his direct examination: "Previous to this sale, and in the fall of 1896, did you give this boy, your clerk, orders and instructions not to offer for sale or sell any of those goods forbidden by statute, and not to sell any of them?"   The objection to this question was general, and counsel for the defendant duly excepted to its exclusion.   In an action such as this, to recover a statutory penalty, where it distinctly appeared that the alleged violation was committed, not by the defendant personally, but by his servant, I think the defendant was entitled to show that the act was committed against his express directions, if such directions were given in good faith, and with an honest intent and desire, and a reasonable expectation, that they should and would be obeyed.   Proof of this kind was relevant upon the issue of the servant's authority, and, although by no means conclusive, was, in my judgment, admissible, and should have taken the case to the jury.

In the case of Cheese Co. v. Murtaugh, 50 N. Y. 314, the court of appeals was called upon to review a judgment in an action brought to recover statutory penalties for delivering diluted and skimmed milk to the factory of the plaintiff.   The act which gave the penalty subjected a person to prosecution only if he knowingly sold or supplied

milk of the character mentioned; and it was held that, inasmuch as the design of the statute was to punish an individual only for an intentional violation of its provisions, such violation could not be established except by proof of a delivery of the prohibited milk by the defendant or with his knowledge or assent or authority. In delivering the opinion of the court, Allen, J., emphasized the point that it was only a sale of the forbidden milk with knowledge of its real nature that was made penal, saying:

"It is not the act of selling, supplying, or bringing to the factory the milk condemned by the law that gives the penalty. If so, it would be immaterial whether the owner and proprietor sold or brought the milk in person or by his servants or the agency of third persons. The act might be regarded as the act of the principal, and he made liable, although done without his personal knowledge or intervention."

The opinion, however, does not touch upon the effect of an actual prohibition by the master which he meant and expected to have obeyed by his servant; and it was such a prohibition that the defendant in the case at bar sought to establish and have submitted to the jury, as tending to prove that his clerk acted wholly without his authority in making the sale of paregoric.

In criminal cases, proof of this kind has often been adjudged admissible. Com. v. Wachendorf, 141 Mass. 270, 4 N. E. 817; State v. Wentworth, 65 Me. 234; Anderson v. State, 22 Ohio St. 305; People v. Utter, 44 Barb. 170. The case last cited was an indictment against a licensed tavern keeper for selling liquor on Sunday, contrary to the excise law of 1857. Laws 1857, c. 628, § 21. The trial judge charged the jury that the defendant would not be liable if he had shown that his agent, in selling on Sunday, had disobeyed his instructions. This portion of the charge was treated as correct by the general term, which held, however, that the defendant was entitled to have several other propositions charged which the trial judge refused to adopt. It was said that, in order to convict, proof must be made of an intent on the part of the defendant to violate the statute, and that the presumption of his innocence was not overcome merely by proving a sale on his premises by his barkeeper, unless there was also evidence of some participation, connivance, or assent by the defendant. I do not see why an intent to violate the public health law is not just as essential to the maintenance of a penal action against the present defendant as an intent to violate the excise law of 1857 was to a conviction in the Utter Case, nor can I perceive any reason why similar proof of an express forbiddance is not evidence which the court is bound to receive as tending to show that the defendant had no part or lot in the transaction.

A case almost precisely in point is Town of Kirkwood v. Autenreith, 21 Mo. App. 73, which was a prosecution for violating an ordinance in selling liquor without a license, and was essentially a penal action, being described as civil in form, and not strictly criminal in character. Here the trial judge had instructed the jury that:

"If they found that the liquor was sold upon the defendant's premises, at the dates charged, by a person in the defendant's employ, they must find for the plaintiff, unless they further find that it was sold contrary to the defendant's orders, and without his knowledge or consent; and that the bur-

den of proof that such orders were given, that they were bona fide, and not colorable, and that the defendant had no knowledge of their violation, was upon the defendant."

The correctness of this instruction was affirmed upon appeal.

I think a similar rule as to the admissibility of evidence to disprove the alleged authority of the servant making the sale is applicable in the present case, and that in accordance therewith the defendant should have been allowed to answer the question above mentioned, which was designed to show that he had ordered his clerk not to sell paregoric. I am also of the opinion that even on the evidence which was already in, tending to prove that he had given such instructions, he was entitled to have the issues of fact submitted to the jury. It was therefore error to direct a verdict against him.

For these reasons I think the judgment should be reversed, and a new trial granted, costs to abide the event. All concur.