(41 Misc. Rep. 321.)

### CULLINAN v. BURKHARD et al.

(Supreme Court, Trial Term, Monroe County. August, 1903.)

1. LIQUOR TAX CERTIFICATE—BREACH OF BOND—SALE BY EMPLOYÉ.

Where a clerk in charge of a pharmacy sold liquor to a person not having a physician's prescription, in the absence of his employer, and without his consent, and contrary to his orders, it did not constitute a breach of the pharmacist's bond.

Action by Patrick Cullinan, state commissioner of excise, against John F. Burkhard and the Title & Guarantee Company of Rochester, to recover the penalty on a bond given to procure a liquor tax certificate as pharmacist. Verdict for defendant. Motion for new trial. Denied.

Mead, Stranahan & Guile, for plaintiff.
Charles J. Bissell, for defendants.

DAVY, J. This action is brought to recover the penalty of $500 on a bond given by the defendant John F. Burkhard, as principal, and the defendant, the Title & Guarantee Company of Rochester, as surety, to procure a liquor tax certificate as a pharmacist under subdivision 3, § 11, c. 112, p. 53, of the liquor tax law. Under this

law each corporation, association, copartnership, or person who has made application for a permit to traffic in liquor is required to give a bond to the people of the state in the penal sum of twice the amount of the tax for one year, conditioned "that if the tax certificate applied for is given the applicant or applicants will not, while the business for which such tax certificate is given shall be carried on, suffer or permit any gambling to be done in the place designated by the tax certificate in which the traffic in liquor is to be carried on, or in any yard, booth, garden or any other place appertaining thereto or connected therewith, or suffer or permit such premises to become disorderly, and will not violate any of the provisions of the liquor tax law; and that all fines and penalties which shall accrue during the time the certificate applied for is held, and any judgment or judgments recovered therefor, will be paid, together with all costs taxed or allowed." The complaint in substance alleges that a liquor tax certificate was issued to the defendant Burkhard as a pharmacist upon his giving the bond referred to. It was established by plaintiff's witnesses upon the trial that on the 16th day of December, 1901, one Henry C. Adee, a special agent of the department of excise, visited the store of the defendant Burkhard at No. 680 South avenue, in the city of Rochester, and purchased of Frank Snyder, the clerk in charge of said store, one-half pint of brandy, for which he paid Snyder 50 cents. On the 18th day of December, 1901, the said agent, Adee, again visited said premises, and purchased of said clerk, Snyder, one-half pint of brandy, for which he paid 50 cents. It also appears from the evidence that the special agent, Adee, had no physician's prescription, and none was asked for by the clerk. The answer of both defendants set up a general denial of the violation of law alleged in the complaint. The defendant Burkhard testified that he was not present when either sale was made; that he was absent from home, at the bedside of his sick father, but he had given instructions to the clerk to sell no liquor to any person except upon the prescription of a licensed physician. His testimony was not contradicted by any of the witnesses. When the evidence was closed, counsel upon both sides moved for the direction of a verdict, which was a concession that there was no question of fact for the consideration of the jury, or, in case there was, it should be determined by the court. So that Burkhard's ignorance of the unlawful sale of liquor by his clerk and his good faith in instructing his clerk not to sell liquor to any person unless he had a physician's prescription were determined in Burkhard's favor.

The principal question presented here is whether Burkhard is liable for the statutory penalty for a breach of the bond committed by his clerk in his absence, without his knowledge, and contrary to his direct instructions. I am unable to coincide with the views expressed by the learned counsel for the plaintiff that this is simply a civil action upon a contract imposed by the express provisions of the bond, and that the relation of master and servant existed, and that proof of the violation of the liquor tax law by the servant in the course of his employment makes the master liable for the penalty, even though the liquor was sold without his knowledge or consent, and against

his express instructions. The penalty referred to in the bond is of the nature of a pecuniary punishment for a violation of the statute pertaining to the excise law, when penal provisions are invoked against one charged with a violation or for omitting to do that which the statute requires. The statute is to be strictly construed, and cannot be extended beyond the clear import of its language. People v. Rosenberg, 138 N. Y. 415, 34 N. E. 285; Verona Central Cheese Co. v. Murtaugh, 50 N. Y. 314. The penalty in this case is expressed in the bond, but the recovery is based upon a violation of the statute. The bond provides that the principal will pay all fines or penalties incurred or imposed for violation of the liquor tax law. The rule is well settled that the relation of principal and agent does not appertain to transactions which are illegal, immoral, or opposed to public policy. All persons actually participating in an unlawful act are principals. The principal cannot delegate to his agent authority to do an illegal act. It has been held that there can be no such thing as agency in the perpetration of a crime or in the doing of an unlawful act. All persons actually participating are principals. Here the directions of Burkhard to the clerk were specific, and he disregarded them. It can hardly be claimed that he was acting in the performance of his duty in doing what he was expressly directed not to do, and which the law prohibited him from doing. The jury or the court to whom the questions of fact were submitted was justified in reaching the conclusion that the sale of liquor by the clerk without a physician's prescription was a willful departure from the instructions of Burkhard, and that he could not, under the circumstances, be held liable for such a willful and unlawful act. This is not a private action against the wrongdoer. It is brought to recover a penalty for a wrong to the people of the state of New York, and is prosecuted for the purpose of punishment, and to deter others from offending in like manner.

In Huntington v. Attrill, 146 U. S. 668, 13 Sup. Ct. 224, 36 L. Ed. 1123, Mr. Justice Gray, in discussing this subject, said:

"The test whether a law is penal in the strict and primary sense is whether the wrong sought to be redressed is a wrong to the public or a wrong to the individual. According to the familar classification of Blackstone, wrongs are divided into two sorts or species: private wrongs and public wrongs. The former are an infringement or privation of the private or civil rights belonging to the individuals, considered as individuals, and are thereupon frequently termed civil injuries. The latter are a breach and violation of public rights and duties which affect the whole community considered as a community, and are distinguished by the harsher appellation of crimes and misdemeanors."

While the authorities upon the main point under consideration are somewhat conflicting, yet I am of the opinion that the sounder rule is that the holder of a license certificate cannot be made to suffer for the unlawful act of his clerk, committed without his knowledge or consent. Any other rule would certainly work great injustice to the holder of the liquor tax certificate. He could have his license taken from him, and be deprived of all rights and privileges thereunder, and compelled to pay the penalty prescribed by statute, simply because his servant, for some petty grievance, sold liquor contrary to law,

and for the express purpose of injuring his master. It seems to me that the statute will bear no such harsh construction. It would require a clear expression of the intent of the Legislature to justify a construction of the statute which would expose an innocent man to a disgraceful punishment for the unlawful act of his clerk, committed without his consent or knowledge.

The American and English Encyclopedia of Law (vol. 17 [2d Ed.] p. 386) states the rule as follows:

"The general rule is well settled that the master is not criminally liable for the acts of his servant or agent done contrary to his orders, and without any authority, express or implied, merely because they are within the course of his business and within the scope of the servant's employment. Unless there is some statutory provision either expressly or impliedly modifying or abrogating this rule, it applies, of course, to acts done by servants or agents in violation of the liquor laws, as well as to other acts which are criminal at common law or made so by statute. It has accordingly been held that a sale of intoxicating liquors by a servant or agent, for whatever cause illegal, will not render the master liable if done without his authority and consent, or in violation of his instructions."

This rule has received the approval of the courts in a large number of the states.

In Matter of Lyman, 160 N. Y. 102, 54 N. E. 577, Judge O'Brien, in speaking for the court, said:

"If in this case Stevens was trafficking in liquors contrary to the statute, he was liable to criminal prosecution, and, if convicted, the same question would then arise that has been presented before, and that is whether the certificate of the company could be forfeited for his wrongful act, committed, so far as appears, without its consent or knowledge. It has been held that under such circumstances the holder of the license cannot be made to suffer even for the unlawful act of his bartender, though the latter had been duly convicted."

In People ex rel. Friel v. Commissioners, 2 App. Div. 89, 37 N. Y. Supp. 485, it appeared that one Kate Mixture was convicted of selling beer on Sunday at the place of business of Friel, and that thereupon the commissioners of excise revoked his license. The return did not show that Kate Mixture sold the beer by permission of Friel, and it was not shown that she was not a member of his family. The court held that the revocation could not be sustained, as the essential facts that the sale had been made by permission of the licensee, and by a woman not a member of his family, had not been proved.

Ample provision is made in the liquor tax law for the punishment of clerks, servants, or agents who violate the law. The language of subdivision 3 of section 34, c. 112, p. 76, of the liquor tax law, pertaining to penalties for violations of the act, in substance is as follows: If there should be two convictions of clerks, servants, agents, or employés of a holder of a liquor tax certificate for a violation of any provision of this act, the liquor tax certificate of the principal would be forfeited, and the said principal would be deprived of all rights and privileges thereunder. If the construction contended for by the learned counsel for the plaintiff is correct, why would not the first conviction revoke his license? It seems to me that the proper interpretation of this section is, if the agent or clerk is convicted of a violation of the law, then, if the principal retains him, he does it

at his peril, because the second conviction revokes his license. It is evident that this section was intended to apply to clerks, agents, and employés who violated the liquor tax law without the knowledge or consent of the principal. If the master knew that his servant was selling liquor in violation of the statute, and permitted him to do the unlawful act, his license might be revoked, even though the servant was not convicted. He would be guilty of a misdemeanor, and, if indicted and convicted, would be subject to a fine and imprisonment. Westchester County v. Dressner, 23 App. Div. 218, 48 N. Y. Supp. 953, was an action to recover a penalty for a sale by an unlicensed person in violation of the public health law. The court said, at page 218, 23 App. Div., p. 953, 48 N. Y. Supp.:

"In an action such as this, to recover a statutory penalty, where it distinctly appeared that the alleged violation was committed not by the defendant personally, but by his servant, I think the defendant was entitled to show that the act was committed against his express directions, if such directions were given in good faith, and with an honest intent and desire and a reasonable expectation that they should and would be obeyed."

In the case of People v. Utter, 44 Barb. 170, it was held that, in order to warrant a conviction of a licensed tavern keeper under the act of 1857, p. 405, c. 628, for selling at his bar on Sunday, proof must be made of an intent on the part of the defendant to violate the statute. Where the sale is not made by the defendant personally, or in his presence, the presumption of his innocence is not overcome by merely showing that the sale was made on his premises by his bartender, unless the evidence also shows that the defendant in some manner participated in it, connived at it, or assented to it.

A case similar to the one under consideration arose in Missouri (Town of Kirkwood v. Autenreith, 21 Mo. App. 73), which was a prosecution for violating an ordinance in selling liquor without a license, and was essentially a penal action, being described as civil in form, and not strictly criminal in character. Here the trial judge had instructed the jury that:

"If they found that the liquor was sold upon the defendant's premises, at the dates charged, by a person in the defendant's employ, they must find for the plaintiff, unless they further find that it was sold contrary to the defendant's orders, and without his knowledge or consent; and that the burden of proof that such orders were given, that they were bona fide, and not colorable, and that the defendant had no knowledge of their violation, was upon the defendant."

In Verona Central Cheese Co. v. Murtaugh, 50 N. Y. 314, Judge Allen, in speaking for the court, at page 319, said:

"One is liable for the unlawful sale of spirituous liquors on his premises, with his assent, by a servant or agent employed in his business. But the sale by his servant and agent is only prima facie evidence of the assent of the employer, and may be rebutted."

Rex v. Almon, 5 Bur. 2686; Commonwealth v. Nichols, 10 Metc. (Mass.) 259, 43 Am. Dec. 432.

It appeared from the evidence in Commonwealth v. Wachendorf, 141 Mass. 270, 4 N. E. 817, that the defendant had a license, and the complaint charged that he unlawfully sold intoxicating liquors between the hours of 11 at night and 6 in the morning, and it was

said in the opinion that the defendant was not liable criminally as seller when the sale proved was made by a servant without his knowledge, in opposition to his will, and was in no way participated in or approved by him.

It was held in Anderson v. State, 22 Ohio St. 305, that where, in a prosecution for unlawfully selling intoxicating liquor, it appeared by the evidence for the state that the sale was made by an agent of the defendant in charge of the establishment where the liquor was sold, it was competent for the defendant to rebut the presumption of prima facie agency which the evidence makes against him by showing that the sale was in fact made without his authority and against his directions.

In Neideiser v. State, 65 Tenn. 499, it was held that it should be left to the jury to say from the circumstances whether or not the owner had knowledge of the unlawful selling. It was error to tell the jury that the facts stated in the charge would, as a matter of law, raise a presumption of knowledge. What circumstances would be sufficient to establish the fact of knowledge was alone for the jury to determine. The owner would not be guilty without knowledge of the fact. The court says:

"It is a general principle that no one should be held criminally responsible for the act of another, unless he counsel, or aid, or consent to the act, except it might be in cases where the statute is so framed as to make a man criminally responsible for failing to prevent the crime of another. The barkeeper would certainly be guilty of the offense, and, if the owner or proprietor had knowledge that the retailing was going on, and either directly permitted it or tacitly consented to it by failing to interfere and prevent further sale, he would certainly be guilty; but if, without his knowledge, and against his consent and directions, the bartender should, upon his own motion, commit the offense, the proprietor would not be guilty."

I am of the opinion that this action cannot be maintained, and that the case was properly disposed of at the Trial Term. The motion, therefore, for a new trial, is denied, with $10 costs to the defendant Burkhard.

Motion denied, with $10 costs.