Fuchsberg, J.
(dissenting). A matter of great public interest indeed is involved in this case. It is that a statute not be unnecessarily interpreted in a manner resulting in the unconscionable treatment of members of the public.
Peter Toro, a New York City Corrections Officer who enjoyed a blameless prior record, was suspended as the immediate result of criminal charges brought against him on the basis of an incident unrelated to his employment. After a flawed trial produced a conviction, the Appellate Division, Second Department, in an opinion in which it minced no words, found that Toro’s arrest had been the result of an erroneous identification which had led to a complete miscarriage of justice. Under no circumstances does the language of that court justify the characterization of the basis for the petitioner’s vindication as a "legal technicality”, whatever place such a term may possibly have in some other jurisprudential context. Accordingly, it dismissed the charges on the merits both on the facts and on the law (People v Toro, 44 AD2d 848).
The Department of Corrections, acting sua sponte, thereupon promptly ordered Toro’s unconditional reinstatement. Toro made application for payment of the wages of which he had been deprived during his suspension. After delaying for a year, during which his departmental superiors supported his right to be paid, the city rejected his demand. This article 78 proceeding followed.
The Supreme Court Justice who heard the case at Special Term awarded judgment directing payment of all wages which Toro would have received between the date when he was suspended and the date when he was reinstated, inclusive of contract raises which became effective in the interim, but less uniform allowances, vacation pay and any moneys he had earned during that period. The Appellate Division, First Department, by a divided court, upheld that decision, except to the extent of disallowing payment for the first 30 days of the suspension.[1] Notedly, the two dissenters differed from the *154 majority only in that they would have limited the back pay to the period preceding the date of conviction at trial; all five Justices agreed on the injustice suffered by the petitioner, the majority terming it "grave”, the dissenters "great”.
On this appeal to us, the issue is whether a civil servant who ultimately is found innocent of any criminal culpability whatsoever is within the embrace of section 30 (subd 1, par e) of the Public Officers Law, which provides that every office becomes "vacant upon * * * [the] conviction [of the incumbent thereof] of a felony, or a crime involving a violation of his oath of office”. Is it not a fundamental precept of justice that, once it is finally decided that an accused has been falsely charged and, on this basis, has been proved guiltless, he is, so far as reasonably possible, to be treated as though he had never been accused at all?
The question answers itself. It does not do so for the first time here. Legal philosophers have long wrestled, not with whether the wrong should be righted, but with how best to do so (see Nixon, Voltaire and the Calas Case [1962], p 198; Borchard, Convicting the Innocent: Errors in Criminal Justice [1932], p 37).
The salutary effect on public confidence in government that flows from realization of the natural societal urge to return a falsely accused individual to his or her status quo ante is not to be underestimated. The moral values so indorsed far outweigh the alarums sounded by the majority. So far as any dislocation of personnel is concerned, it would hardly call for much administrative ingenuity to arrange that appointment to a post vacated by an occupant whose case is still in the appellate process be conditioned on the possibility of a reversal. In Toro’s case the reality not only is that his position remained available but that, having been vindicated on the merits, he was welcomed back with open arms. Certainly, in any event, "the prospect of financial impact” should not "dictate the judicial outcome” (Brooklyn Union Gas Co. v New York State Human Rights Appeal Bd., 41 NY2d 84, 90).
Significantly, section 30 of the Public Officers Law itself provides no specific guidance with regard to suspended wages in circumstances where a conviction has been rendered nugatory by a superseding determination that it was totally unfounded. The statute’s complete silence on the subject makes it difficult to imply an undeserved forfeiture.
It is familiar doctrine that a statute imposing a penalty or *155 forfeiture is to be strictly construed (Osborne v International Ry. Co., 226 NY 421, 426; McKinney’s Cons Laws of NY, Book 1, Statutes, §§ 271, 273; 82 CJS, Statutes, § 389). Unless plain and unequivocal language so requires, "a 'penalty cannot be raised by implication, but must be expressly created and imposed’ ” (Health Dept. of City of N. Y. v Knoll, 70 NY 530, 536; see, also, United States v Weitzel, 246 US 533, 543 [Brandéis, J.]; Verona Cent. Cheese Co. v Murtaugh, 50 NY 314, 317). This principle of sound statutory construction especially interdicts an interpretation of section 30 which unnecessarily would run counter to the quest for fundamental fairness to persons who ultimately are found to have been entirely innocent of any wrongdoing. An opposite view would literally add injury to insult.
Matter of Obergfell (239 NY 48, 50), relied on by the majority, does not require a contrary result. That case arose in a much different matrix. The petitioner there was an elected official. A Mayor who had obtained a stay pending the appeal of his criminal conviction, he sought an order directing the board of elections to disregard the city clerk’s certification that his office was vacant. At the time the court affirmed the denial of the application, the conviction was still in full force and effect and there was therefore at most a "possibility” that it eventually might be reversed. Thus, the decision in Obergfell represents only an application of the rule that the term "conviction”, as used in statutes providing for disabilities, disqualifications, or forfeitures, should be construed to mean an undisturbed judicial finding of guilt (see, e.g., Matter of Mitchell, 40 NY2d 153; Matter of Robinson v Board of Regents, 4 AD2d 359, mot for lv to app den 3 NY2d 708; cf. Matter of Keogh v Wagner, 20 AD2d 380, 384-385, affd 15 NY2d 569). It did not determine the issue before us, i.e., the effect of an unmistakable and unqualified final exoneration.[2]
For these reasons, the certified question should be answered in the affirmative and the order affirmed.
Chief Judge Breitel and Judges Gabrielli, Jones and Cooke concur with Judge Jasen; Judge Fuchsberg dissents in *156 part and votes to affirm in a separate opinion in which Judge Wachtler concurs.
Order modified, with costs, in accordance with the opinion herein and, as so modified, affirmed. Question certified answered in the negative.

. The Appellate Division believed subdivision 3 of section 75 of the Civil Service Law required the modification. Since Toro has not cross-appealed, it is unnecessary to reach the merits of that question (see Little Joseph Realty v Town of Babylon, 41 NY2d 738, 746; People v Consolidated Edison Co. of N. Y., 34 NY2d 646, 648; City of Rye v Public Serv. Mut. Ins. Co., 34 NY2d 470, 474).

. Matter of Pauley v Noeppel (1 Misc 2d 928), Matter of Smith v Noeppel (204 Misc 49), Tourjie v Noeppel (120 NYS2d 478) and Opinions of the State Comptroller (vol 15, 1959, p 437), all cited by the majority, are premised on a far broader reading of Obergfell than that decision warranted. Compare Matter of Learman v Roche (176 Misc 980).